TRINITY COUNTY LUMBER COMPANY v. W. F. PINCKARD ET AL.

No. 294.

1. **Innocent Purchaser.** — The statute which declares a deed void as to subsequent purchasers if not registered, can only be invoked when the prior and subsequent purchaser is each a vendee of the same person, or of his personal representatives. The plaintiffs and defendants claim under the same vendor, but the deed to those under whom the defendants claim was found by the court to be a forgery. If that deed had been genuine, then defendants would have been protected under the statutes of registration.

2. **Findings of Fact by Court.** — It has long been the rule of appellate courts of this State, not to reverse a finding upon an issue of fact, whether the finding be that of a jury or of the court, unless it is unsupported by the evidence.

3. **Burden of Proof when Forgery of Deed Alleged.** — When the proper affidavit is filed, charging a deed offered in evidence to be forged, the party offering the instrument must offer evidence sufficient to establish, at least prima facie, the execution of the paper by the party whose act it purports to be, and when this is done, the burden shifts to the party assailing the genuineness of the instrument.

4. **Notarial Act as Evidence.** — Conveyance from the original grantee to those under whom plaintiffs claim, was by notarial act dated March 13, 1836, executed before a notary in Louisiana. It is no objection to the instrument that the testimonio was not accounted for. The testimonio is a copy or first original of the protocol, and is itself proof of the original, but not higher or better evidence of the protocol—which remains in the office of the notary—than is an exemplified copy. If the testimonio is proof of the protocol, the protocol should be proof that the testimonio was delivered, and it is unnecessary to account for the testimonio before proof can be made of the protocol.

5. **Notarial Act not Signed by the Vendees.**—In ordinary contracts evidenced by notarial acts, it has been customary and necessary to require the signature of both parties to the contract, but we are not aware of any law, obtaining now or at the date of this instrument, which requires the signature of the vendee in a sale of land, to make valid the conveyance, whether it be by deed or notarial act. There was no law requiring that the vendee of a colonist should contract with the vendor for the performance of the conditions of settlement and payment. The law imposed that obligation on the purchaser, and such recitals in this instrument were unnecessary, as the title was good without them.

6. **Execution of a Power in 1836.**—The execution of the power by the attorney in his own name is invalid at common law, but the rule does not now, nor did it in 1836, obtain in this State. Under the law of this State, a power may be executed by the attorney without reference to his authority.

7. **Stale Demand.** — When one who has only a contract for the execution of title, sleeps upon his rights until after the period in which a court of equity would give relief by decreeing title, a plea of stale demand is a complete defense to the suit; but when one has already acquired title, whether it be a legal or an equitable one, no lapse of time unaccompanied by adverse possession will defeat his right of recovery.

8. **Evidence of the Possession by a Tenant.** — The alleged written acknowledgment of one whom the defendants sought to show was a tenant, was offered by the defendants, in which the writer acknowledged that he was hold-

ing possession for one of those under whom defendants claim, but the evidence of its execution was held not sufficient to authorize its admission.

**9. Declarations of one in Possession.**—Declarations of one in possession of land are admissible in explanation of his possession, but not as evidence of title. They can only be received as evidence of the grounds on which the declarant claims possession, and when offered to prove title they are rightfully excluded.

**10. Presumptions of Grant.**—A grant can not be presumed from John Johnson in favor of those claiming under Dailey. The deed from Johnson to Stubblefield, found to be a forgery, and from Stubblefield to Dailey, reciting a conveyance from Johnson to Stubblefield, had been offered by defendants as links in their chain of title. The facts in the record preclude the presumption of a deed from Johnson to Dailey.

**11. Payment of Taxes — Limitation of Five Years.** — The law requires one claiming under the statute of limitation of five years to show affirmatively the payment of taxes concurrently with the possession.

**12. Limitation of Ten Years.**—See facts which are held not to establish the defense of the statute of limitation of ten years.

APPEAL from Trinity.    Tried below before Hon. NORMAN G. KITTRELL.

*J. P. Stevenson* and *J. R. Burnett,* for appellant.—1.  A certified copy of an act of sale, duly filed in Texas previous to the first Monday in February, 1837, is admissible by force of our statute; but a copy of such act made out of the State in 1836, and not signed by the vendees, and not duly recorded, and where the testimonio or copy is not accounted for or shown to have been delivered, is not admissible without proof of the execution of the original.   The certificate of the Secretary of State does not add to the authenticity of the purported act of sale.   Rev. Stats., art. 2256; 2 Sayles' Real Estate Laws, sec. 790; Frost v. Wolf, 77 Texas, 455; Titus v. Kimbro, 8 Texas, 210.

2.  The court erred in holding that the burden of proof was on defendant to prove the execution of the deed from John Johnson to W. H. Stubblefield, because the same was attacked as a forgery, the said deed being duly proved as an ancient instrument.   And the court erred in finding that said deed was a forgery, because defendant proved its execution as at common law, and showed possession and payment of taxes and notorious claim of title thereunder for more than thirty years; and because the burden of proof was on plaintiffs to show that said deed was a forgery; and the evidence adduced was wholly insufficient to establish such fact, and said finding of the court is unsupported by the evidence. Smith v. Gillum, 80 Texas, 127; Cox v. Cock, 59 Texas, 521; Holmes v. Coryell, 58 Texas, 688; Johnson v. Timmons, 50 Texas, 534; Willis v. Lewis, 28 Texas, 521; Hutcheson v. Meazell, 64 Texas, 604; Mackay v. Easton, 19 Wall., 619.

3.  Defendant and its vendors having bought the land and paid valuable considerations therefor, without notice of plaintiffs' title, and re-

lying on a regular and duly recorded title from the sovereignty of the soil, and plaintiffs having failed to record their title according to law, the court should have found for defendant as an innocent purchaser. Watson v. Chalk, 11 Texas, 89; Guilbeau v. Mays, 15 Texas, 89; Moore v. Curry, 36 Texas, 668; Varick v. Briggs, 6 Paige's Ch., 323; 2 Pome. Eq. Jur., sec. 754.

4. The power of attorney from Johnson and conveyance from Richardson in his own name conveyed only an equitable title; and under the uncontradicted facts showing a record title in Dailey, with possession and payment of taxes, and notorious assertion of an undisputed title for more than thirty years, the court should have held that plaintiffs' claim was a stale demand and rendered judgment for defendant. Plaintiffs were barred by laches. Eckhart v. Reidel, 16 Texas, 68; Rogers v. Bracken, 15 Texas, 567; Lewis v. Cole, 60 Texas, 341; 1 Dev. on Deeds, sec. 381; Echols v. Cheney, 28 Cal., 157.

5. If plaintiffs' claim was not a stale demand, the court should have presumed, from the uncontradicted evidence, a conveyance of the land from those under whom they claim to Dailey. Dailey v. Starr, 26 Texas, 562; Fletcher v. Fuller, 120 U. S., 565; 2 Whart. on Ev., secs. 1338, 1351.

6. The court erred in admitting in evidence and considering, over defendant's objections, the declarations of Josiah Johnson in reference to a purchase by him of 160 acres of the land in controversy from Dailey, and the cancellation of said trade, because said declarations were hearsay and self-serving; and the court erred in admitting in evidence and considering declarations of said Johnson, that he claimed a pre-emption on said land, and set up a claim as a settler, because said evidence was hearsay and not in disparagement of the claim or title of said Johnson, and was self-serving. Hurley v. Lockett, 72 Texas, 262; Hays v. Hays, 66 Texas, 607; Flanagan v. Pearson, 61 Texas, 302; 1 Greenl. on Ev., sec. 109; 2 Whart. on Ev., sec. 1156.

7. The court erred in finding that Josiah Johnson did not hold possession of the land in controversy under Daniel Dailey and in subordination to Dailey's title, under which defendant claims, the evidence clearly showing that Johnson did so hold; and said finding of the court is not supported by the evidence. Fowler v. Simpson, 79 Texas, 617; Tyler v. Davis, 61 Texas, 674; Juneman v. Franklin, 67 Texas, 411; Wood on Lim., sec. 265.

*F. C. Von Rosenberg, B. F. Bean,* and *Nunn & Nunn,* for appellees.

1. Where the witnesses to a deed are dead, and the grantor signed by his mark, as in this case, the proof of the handwriting and signature of two of the subscribing witnesses is sufficient to admit the deed to record. Hollis v. Dashiel, 52 Texas, 187; Pasch. Dig., art. 5009.

2. It is immaterial who had the burden of proof after opposing evidence is introduced as to the forgery, because in such case it became the duty of the court to pass upon the question. The court did so expressly, and its finding is fully sustained by the evidence.

3. The payment of taxes by redemption from tax sale is not such payment as required by the statute under the five years statute of limitation, even had it been made, for the law requires contemporaneous and concurrent payment of taxes, possession, etc.

4. The doctrine of innocent purchasers can have no application under a forged deed; and the rule as to stale demands applies only to parties or their privies, in contracts the enforcement of which has been long delayed, and can furnish no relief to appellants, who are setting up defenses against the true title, with which they have no connection; and as to them it makes no difference whether plaintiffs' title is legal or equitable, especially under our blended system. Nor could the court presume a deed duly executed in their favor, in face of the fact that the deed they exhibited and claimed under was a forgery.

5. It is a universal rule, that no paper can be used as evidence till its execution has been duly proved, except in those cases where the statute has, for good reason, otherwise provided. Hampshire v. Floyd, 39 Texas, 104; Dikes v. Miller, 24 Texas, 417; Greenl. on Ev., sec. 558, note; 13 Am. and Eng. Encycl. of Law, 1088.

6. All declarations of party in possession, explanatory of the nature of his possession, are admissible as part of the res gestæ, and it makes no difference whether they are favorable or adverse to the one making. The authorities cited by appellant do not show to the contrary, but only place certain limitations to the rule, that do not affect this case. 1 Greenl. on Ev., sec. 109; Hooper v. Hall, 30 Texas, 159; Hurley v. Locket, 72 Texas, 262.

PLEASANTS, ASSOCIATE JUSTICE.—The appellees, the heirs of William M. Pinckard, and Claiborne Steele, brought this suit on the 1st day of June, 1891, in the District Court of Trinity County, against the appellant, a private corporation, organized under the laws of Iowa, and L. T. Sloan, for the recovery of a league of land, granted by the government of Coahuila and Texas, on the 6th day of October, A. D. 1835, to John Johnson.

Defendants, for answer, pleaded the general denial and the statute of limitation of three, five, and ten years; and to the statute of limitation, plaintiffs, by replication, pleaded the disabilities of minority and of coverture. Both plaintiffs and defendants deraign title under the conveyances purporting to be made by the grantee. The instrument under which the defendant claimed title, bearing date the 16th of September, 1857, and proved for record by one of the subscribing witnesses, before

the Texas Commissioner for the parish of Natchitoches, Louisiana, and duly recorded in Trinity County October 19, 1859, and purporting to be a conveyance for the land in question from the grantee, John Johnson, to one Stubblefield, was charged by plaintiffs to be a forgery, the charge being supported by the necessary affidavit.

The case was tried by the court without a jury, and judgment was rendered for plaintiffs on the 3rd day of September, 1892. The judge, in his conclusions of fact, found against the defendant upon the statute of limitations; he found the averment of payment of the taxes by defendant, and those under whom it claimed, to be true, but found that the averment of actual possession of the premises was not sustained by the evidence. Upon the question of forgery, the finding was for the plaintiffs.

Defendant's counsel, in their learned brief, present and ably discuss many assignments of error. If the finding of the court upon the question of forgery be correct, then the plea of the statute of three years limitation, and that of an innocent purchaser, are necessarily eliminated from the case, and need not be noticed by us. If the deed from Johnson to Stubblefield be in fact a forgery, then the failure of the plaintiffs' ancestors to place their title upon record can avail the defendant nothing.

The statute which declares a deed void as to subsequent purchasers if not registered, can only be invoked in aid of a former title when the prior and subsequent purchaser is each a vendee of the same person, or of his personal representatives. We have carefully considered the evidence bearing upon the issue of forgery; and while it is, as it is generally in such cases, entirely circumstantial, we are not able to say that the finding of the court that the deed was spurious is not warranted by the facts. Had its finding been otherwise, the judgment of the court would necessarily have been for the defendant, as it is evident that the defendant, as well as each of the other purchasers under Stubblefield, paid a valuable consideration for the land; and there is no evidence whatever that any one of them knew of the previous conveyance from the grantee under which the plaintiffs assert their title. The appellees' title was not registered in the county in which the land is situated until the 14th of July, A. D. 1890. Nor had the plaintiffs, nor those under whom they claim, ever exercised any of the rights of ownership over any portion of the land prior to this date; nor had the land ever been assessed in the name of any one claiming under the plaintiffs' title. Under such circumstances, if the deed from John Johnson to Stubblefield were genuine, the defendant would be protected under the statutes of registration. It has long been the rule in the appellate courts of this State, not to reverse a finding upon an issue of fact, whether the finding be that of a jury or of the judge of the court, unless it is unsupported by the evidence.

But the appellant insists that the finding of the court upon the issue of forgery shows upon its face that the judge misapprehended the rule of

law for determining upon whom rested the burden of proof upon this issue; and for that reason the finding is necessarily erroneous, and should be reversed. The rule of law, as we understand it to be, is, when the proper affidavit is filed, charging a deed offered in evidence to be forged, that the party offering the instrument must offer evidence sufficient to establish, at least prima facie, the execution of the paper by the party whose act it purports to be; and when this is done the burden of proof shifts to the party assailing the genuineness of the instrument. In this case, the antiquity of the instrument, its due registration shortly after its execution, the long and continuous and notorious assertion of property in the land by those claiming under the instrument, and their long and continuous custody of it, were sufficient, unless overcome by the rebutting evidence of the plaintiffs, to establish its authenticity. While we will not say, from the language of the learned judge who tried the case, that he was in error as to the law, it may be conceded that he was; and yet we should sustain his finding, because the evidence pro and con was before him, and was doubtless deliberately and thoughtfully considered and weighed, and in our judgment is sufficient to sustain the charge of forgery.

We now proceed to consider the objections presented in appellant's brief under the first assignment, to the evidence offered by appellees in support of their claim of title, and admitted by the court over appellant's objections. The first paper offered by appellees purports to be a power of attorney from the grantee of the land to William Richardson, bearing date the 7th of October, 1835; and which, omitting the caption, is in the words following:

" Know all men by these presents, that I, citizen John Johnson, for divers good causes and considerations, as well as for and in consideration of the sum of $500 to me in hand paid by William Richardson, the receipt of which is hereby acknowledged, have this day nominated, constituted, and appointed the said William Richardson my true and lawful attorney; for me and in my name to receive, take possession of, hold, enjoy, sell, alien, convey, and transfer over in full and free sale one sitio of land, which I am entitled to as a colonist in Jose Vehline's colony; hereby granting to my said attorney as full, free, and ample power as in the premises I myself possess, and fully authorizing my said attorney to do all and everything relating to the taking possession, holding, enjoying, selling, and disposing, and making in my name good and bona fide deeds of sale for the aforesaid sitio of land; hereby ratifying and confirming and declaring good and valid to all intents an purposes, all the acts which my said attorney may do in the premises; hereby obligating myself and family, binding all my properties, present and future, to protect, as far as I can do so, the title to said sitio of land in my said attorney or those to

whom he may transfer the same; hereby renouncing all laws which may favor me in any attempt to avoid or annul this instrument, either in the whole or in part, and submitting myself to the honorable judges and judiciary of this State, and particularly of this municipality, to enforce the same according to its true intent and literal meaning.

" In witness whereof, I have hereto subscribed my name, with my witnesses, the date above given.

his<br>
" JOHN X JOHNSON.<br>
mark.

" G. POLLITT,
" S. R. PECK,
" JAMES GRANT,
" CHS. HEISKELL,
" THO. J. RUSK."

The plaintiffs proved that the witnesses to this deed were dead, and then further proved that their signatures to the paper were genuine.

The plaintiffs next offered in evidence the following instrument. of writing:

" *Sale.*—Wm. Richardson to W. M. Pinckard, Joseph Walker, and Claiborne Steele. 30th March.

" *State of Louisiana, City of New Orleans.*—Be it known, that this day before me, William Boswell, a notary public in and for the city and parish of New Orleans, State of Louisiana aforesaid, duly commissioned and sworn, personally came and appeared Mr. William Richardson, a citizen of the department of Natchitoches, who declared, that for the consideration of $1000, to him in ready money paid, the receipt whereof he hereby acknowledges, he does by these presents grant, bargain, sell, convey, transfer, assign, and set over, with a full guarantee against all troubles, debts, mortgages, claims, evictions, donations, alienations, or other incumbrances whatsoever, unto Messieurs William Monroe Pinckard, Joseph Walker, and Claiborne Steele, of Vicksburg, in the State of Mississippi, joint and equal purchasers, present and accepting, their heirs and assigns, and acknowledging possession thereof, a league of land situate in Texas, Republic of Mexico, between Little and Big Neches, on Duncan's path, commencing the survey at a red oak which forms the first corner, from which a red oak 8 inches diameter bearing north 18 degrees east, distance $8\frac{5}{10}$ varas, and another red oak 14 inches diameter bearing north 71 degrees west, distance $11\frac{6}{10}$; thence north 60 degrees west 5000 varas, raised a mound for second corner, from which a black jack bearing north 85 degrees east, distance $4\frac{4}{10}$ varas, and a post oak 5 inches diameter bearing north 8 degrees east, distance $4\frac{2}{10}$ varas; thence north 30 degrees east, distance 5000 varas, to a black jack 7 inches in diameter, which forms the third corner, from which a red oak 15 inches in diameter, bearing north 33

degrees west, distance $4\frac{2}{10}$ varas; thence south 70 degrees east 5000 varas, raised a mound for fourth corner, from which a pine 10 inches in diameter, bearing north 83 degrees west, distance 10 varas, and a pine 14 inches in diameter bearing south 70 degrees west, distance 13 varas; thence south 30 degrees west 5000 varas, place of beginning; containing 1 league or 4428 acres of land, of which 6 labors are arable and 19 labors pasture lands; together with the improvements thereon and appurtenances thereof, and all rights, servitudes, privileges, and advantages thereunto belonging or in anywise appertaining; acquired by the present seller from John Johnson by act under private signature, dated 7th of October, 1835, and was granted to said Johnson by the government of Mexico, on the 6th day of October, 1835, as will appear by the documents hereto annexed.

" To have and to hold the said tract of land and appurtenances unto the said purchasers, their heirs and assigns, to their proper use and behoof forever; and the said seller, for himself and his heirs, the said tract of land, etc., to the said purchasers, their heirs and assigns, shall and will warrant and forever defend against the lawful claims of all persons whomsoever, by these presents. And the vendor does moreover subrogate said purchasers to all the rights and actions of warranty which he has or may have against his own vendor or against the vendors of his vendor, fully authorizing said purchasers to exercise the said rights and actions in the same manner as he himself might or could have done.

"And therefore the said purchasers declare that they hereby bind themselves to comply with the twenty-fourth article of the Colonization Law of the 24th of March, 1825, to cultivate the said land agreeably to the prescriptions thereof, and to pay the government of Mexico all sums due thereon; and also that they will never sell, hire, make donation, mortgage, or any way dispose of said land, or any part or parts thereof, to any church, nunnery, corporate body, bodies, or societies, whereby the same will not be cultivated.

" Thus done and passed in my office, at the city of New Orleans aforesaid, in the presence of Edmond Barnett and Francois N. Mioton, witnesses of lawful age and domiciliated in this city, who hereunto sign their names, together with the said parties and me, the said notary, on this 13th day of March, in the year 1836.

[Original signed]

" Wm. Richardson,
" Edward Barnett,
" F. M. Mioton,
" William Boswell,
" Notary Public."

This instrument was duly authenticated under the laws of Congress, by proper certificate from Martin Voorhies, notary public for the parish of Orleans, in the State of Louisiana, and by certificate of the Secretary of

State of Louisiana, under the seal of the State, stating that Voorhies was notary public for the parish of Orleans, and the custodian of notarial records for that parish, and that his signature to the certificate attached to the copy from the archives of his office is genuine, and of his proper hand-writing; and that his attestation thereon is in due form, and by the proper officer, and that full faith and credit are and ought to be given to all his official acts as such.

The objections to the admission of the notarial act are: first, there was no evidence of the execution of the original; second, because the testimonio was not accounted for, and there was no evidence that such was ever delivered; third, because there was no evidence of custody on part of grantees of said power of attorney, or of a copy of said act of sale, or other title papers; fourth, because said certified copy was not duly recorded, and because said purported act was not signed by the vendees, and was not in the name of Johnson.

The instrument was admissible in evidence under the Act of Congress of March 27, 1804. There is no objection to the form of the certificate of the notary, or that of the Secretary of State of Louisiana; and the copy was itself, without further evidence, proof of the genuineness and authenticity of the act. The courts of this State take judicial notice of the laws of Louisiana, and also of the Spanish law in force here at the date of the execution of this instrument. Watrous v. McGrew, 16 Texas, 506.

We do not think the second objection is well taken. The testimonio is a copy, or first original, as it is sometimes called, of the protocol, and is itself proof of the original; but we do not understand that it is any higher or better evidence of the protocol than is an exemplified or certified copy. The testimonio is given to the grantee at the time of the execution of the protocol, for his use, while the protocol remains an evidence in the office of the notary before whom the act was passed. It is true that in the opinion delivered by Judge Lipscomb, in Titus v. Kimbro, 8 Texas, there are dicta to the effect, that before the protocol is admissible in evidence the testimonio must be accounted for; but this view does not seem to have been acquiesced in by Judge Hemphill, who also delivered an opinion in that case. And in Watrous v. McGrew this precise objection was made to the admission of the protocol, and yet the certified copy of notarial act from the custodian of notarial records for the city of New Orleans was admitted in that case, and held by the court to be a valid conveyance of the land which the act purported to sell, provided the power of attorney to which the act referred as authority for the sale had been duly executed. If the testimonio is proof of the existence of the protocol, the protocol itself should be proof that the testimonio was delivered, as the law required, to the vendee. This being so, we can not see the necessity for requiring the production of the testimonio, or its nonproduction accounted for, before proof can be made of the protocol. What we have said in

discussing the second ground of objection renders it unnecessary to notice the third ground of objection.

To the admission of this instrument, under the fourth ground of their objections, counsel for appellant insist that the act should have been excluded, because it was not signed by the vendees, and was not in the name of Johnson. As to the first of these two objections, we have to say, that we are not aware of any law obtaining now, or at the date of this instru-ment, which requires the signature of the vendee in a sale of land to make valid the conveyance, whether the conveyance be by a deed of bargain and sale or by notarial act. We feel quite sure that it has not been the practice to have the vendee sign his name to acts purporting to convey to him real estate.

In ordinary contracts, evidenced by notarial act, it doubtless is and has been customary and necessary to require the signature of both parties to the contract. It will not be denied that Johnson, after the issue to him of the final title to his land, was authorized to sell and convey the same before he performed the conditions upon which the title issued; and that his vendee or vendees would take a complete title, subject, however, to be forfeited by the government making the grant, if its conditions were not performed. Hancock v. McKinney, 7 Texas, 384. There was no law requiring that the vendees of a colonist should contract with him for the performance of the conditions upon which the land was granted to him when the sale was made, after the issuance of final title to grantee. The law imposed that obligation upon the purchaser. This being the law, where was the necessity for the recitals in the act of conveyance, that the purchasers would perform the conditions of the grant to Johnson, take possession of the land, use and cultivate it for the period prescribed by the colonization law, and pay the price stipulated for within the time allowed for payment? If the conveyance would be good without the recital of such stipulation on part of the purchasers, then their signatures need not be affixed to the act to make it valid and binding upon the vendor and his privies.

It is further objected under this fourth head, that the act of sale by Richardson does not purport to be in the name of his principal, and that therefore it was not an execution of the power, and did not convey the title from Johnson. When this act was passed it must be remembered that neither in Texas nor in Louisiana was the common law of England in force; nor was the distinction between law and equity which obtains in the courts of England, and most of the States of the Union, known in either Louisiana or Texas when this act was passed.

The execution of a power by the attorney in his own name is at common law invalid; but that rule does not now, nor did it obtain in this State when the act in question was passed. Under the law of this State a power may be executed by the attorney without reference to his author-

ity.   Our law, in this particular at least, dispenses with the technical requirements of the common law; and if the attorney has the power to convey, the conveyance is binding upon the principal, and conveys his title, though the conveyance be made without reference to him.   Hough v. Hill, 47 Texas, 148; Rogers v. Bracken, 15 Texas, 564; Link v. Page, 72 Texas, 592.

Under the appellant's third assignment, counsel insist that the court erred in not rendering judgment for the defendant, because the plaintiffs' title is at best but an equitable one, and their claim to the land is a stale demand.   Under the law of this State, an equitable title is as potent as a legal one, and suits for trespass may be prosecuted or defended as effectually under an equitable title as under a legal title; and the plea of stale demand can not avail in such suits against an equitable one any more than against a legal title.   When one who has only a contract for the execution of title sleeps upon his rights until after the period in which a court of equity would have given relief by decreeing him title, a plea of stale demand is a complete defense to his suit.   But when one has already acquired a title, whether it be a legal or an equitable one, no lapse of time, unaccompanied by adverse possession, will defeat his right of recovery.   Martin v. Parker, 26 Texas, 253.

It is not necessary, under our view of the legal effect of the notarial act, coupled with the deed from Johnson to Richardson, to determine whether that deed be simply a power of attorney or a conveyance of the land to Richardson, investing him with full and complete title.

Under their sixth assignment of error, counsel submit that the court erred in excluding the alleged written acknowledgment from Joshua Johnson that he was holding possession of the premises for Daniel Dailey, the vendee of Stubblefield, and the vendor of Pierson, from whom the defendant purchased.   Pierson testified, that this paper was received by him from George Dailey; that it bore date in 1873; that George Dailey was dead, and that the instrument was turned over to him along with the title papers of Daniel Dailey; that it was in the handwriting of a Mr. Cundiff, with whose hand the witness seemed to be familiar, and it was signed by Joshua Johnson; and the witness further testified, that he thought he turned the paper over with the title papers to the defendant Sloan when the land was sold to him, and if Sloan did not have it, the paper was lost.   Sloan had no recollection of receiving such a paper, and had none such in his possession.   Upon cross-examination, the witness Pierson testified, that he did not know that Johnson signed the paper, further than that he was told so by George Dailey.   The witness also testified, that Joshua Johnson, in conversation with him, after the sale of the land by Dailey to witness, told witness that he was holding the land for Daniel Dailey, and that after Dailey left the neighborhood and removed to Northern Texas, he became uneasy for fear he would lose his home,

and that he went to see George Dailey about the matter, and that George Dailey satisfied him, and he continued on the land. This evidence certainly would not be sufficient to authorize the admission of the paper as an acknowledgment by Johnson that he was Dailey's tenant, as against him, if he were asserting title to the land against Dailey or his vendee; and we are of opinion that it was not admissible between the parties to this suit, and that the court did not err in excluding it upon objection being made to it by the plaintiffs.

The admission of testimony by the court, over objection of defendants, that Joshua Johnson, while on the land, declared that he had at one time during his occupancy purchased from Dailey 160 acres of the land, and that they rescinded the sale because Johnson could not make title, was not error. Declarations of one in possession of land are admissible in explanation of his possession. Such declarations are not admissible as evidence of title; they can only be received as evidence of the grounds on which the declarant claims possession. Mooring & Lyons v. McBride, 62 Texas, 312.

And equally untenable, we think, was the objection to the admission of declarations by Johnson while on the land, that he claimed 160 acres of it by right of pre-emption.

The contention by appellants, that the court, under the circumstances, should have presumed a conveyance from the grantee, John Johnson, in favor of those claiming under Daniel Dailey, might doubtless be correct if the deed from Johnson to Stubblefield had not been offered in evidence by defendants as a link in their chain of title, and the deed from Stubblefield to Dailey had recited a conveyance from Johnson to Stubblefield. There would have then been such a similarity between this and the case of Dailey v. Starr, reported in 26 Texas, as to have justified the court in presuming a grant. But the facts as presented in the record repel any such presumption.

The defendant's title is either genuine or it is false and spurious.

We have carefully considered all the facts of this case; and while we think the evidence is amply sufficient to have authorized the court to find for the defendants upon the question of possession for five years by Dailey through tenancy of Joshua Johnson; and while we have no doubt that both the son and daughter of Joshua Johnson attorned to Pierson after his purchase, and that they continued upon the land as his tenants from 1884 until the institution of this suit, we still think the court properly decided against the defendants upon the statute of limitation of five years, because the evidence failed to show a compliance with the statute in the payment of the taxes.

We are aware that the court finds, from the absence of proof of default in the payment of the taxes, and from the fact that the land was assessed to Dailey, that he paid the taxes. The law, we think, requires one claim-

ing under the statute of limitation to show affirmatively the payment of the taxes; and not only must this be shown, but the payments must be ·concurrent with the possession.    The testimony as to whether the taxes upon the land accruing subsequent to the sale by Dailey had been paid at the time of trial, is conflicting; but if they were paid, there was no payment until after the sale by Pierson to Sloan, in January, 1887; and to make the bar, the payment must antedate the year 1887, otherwise there could not be five years of concurrent possession and payment of taxes prior to the institution of the suit.

As to the defendant's defense of ten years limitation, we can not say the court erred in holding that this defense was not established.    The ·statute commenced running for the first time after Joshua Johnson's entry upon the land, in December, 1869, and sometime in 1877 Dailey sold the land to Brown, who in 1879 (not having met the notes given in payment ·of the purchase), at the request of Dailey, made sale of the premises to Pierson, the consideration being a debt due from Dailey to Mrs. Pierson. 'Then if it be conceded that Johnson was a tenant of Dailey, the ten years bar is not established, unless by mere.operation of law, without attornment by Johnson to Brown, nor even notice to Johnson of the sale, the latter became, as soon as the sale was made to the former, his tenant, and to such proposition we are not prepared to give our assent without further investigation.    So that from whatever aspect we consider the case, we are unable to reverse the judgment, even though we should do what we have .already declined to do, reverse the findings of the judge upon the facts, notwithstanding the conflict in the evidence.

There is very decided conflict in the evidence, upon both the question ·of tenancy and the question of payment of taxes subsequent to the pur- ·chase of the land by Pierson.

The judgment of the lower court is affirmed.

*Affirmed.*

Delivered October 12, 1893.

Justice WILLIAMS did not sit in this case.

### ON MOTION FOR REHEARING.

PLEASANTS, ASSOCIATE JUSTICE.—In our opinion delivered when the .judgment of affirmance was rendered in this cause, we say that we do not think the finding of the trial judge, that Daniel Dailey paid taxes on the land in dispute for five years, was correct, because the evidence fails to . show affirmatively payment of taxes by Dailey; and that payment by him could not, in our opinion, be presumed from the fact that the land was .assessed in his name, and from the absence of any evidence of default in the payment of taxes; the record from the Comptroller's office showing

assessment of the land by Dailey for several years, but showing neither payment nor nonpayment of the taxes. We have, since this motion was submitted, again examined the statement of facts, and we are led to believe that we may have been in error in holding that there was no evidence of payment of the taxes by Dailey. The testimony of a former collector of taxes for the county of Trinity, from 1870 or 1871 to 1875 or 1876, may be evidence of such payment; and we therefore correct our conclusions of fact in this particular, and will not announce as our conclusion that the finding of the trial judge on this point is without evidence to support it.

This modification of our conclusions upon the facts renders it unnecessary to discuss the proposition submitted by counsel, to the effect, that as the finding of the court was not excepted to or assigned as error by the appellees, it was not subject to revision by this court.

In the fourth paragraph of their motion, counsel for appellant contend, that the sale of the land from Dailey to Brown, in 1887, was not a conveyance, but simply an executory contract for the sale of the land. If the notes recited in the deed of conveyance did in fact retain the vendor's lien on the land, then it is true that the title did not pass; and it may be that Dailey would continue to hold possession through Johnson, if the latter was his tenant, until the land was conveyed to Mrs. Pierson, on the 12th of December, 1879, which would give him possession for ten years, if Johnson's tenancy be counted from the 4th of December, 1869, the day on which the statute commenced running. But the evidence was conflicting as to whether Johnson was Dailey's tenant or not. This we said in our opinion; and while it is true we said we thought the evidence was sufficient to have justified the court in finding in favor of appellant on this issue, we also said that we could not reverse the judgment when the evidence was conflicting. And we find nothing in this motion which satisfies us that the judgment should be reversed. We still think there was no error committed by the court against appellant in the admission or the exclusion of evidence. The declarations of Johnson while on the land were not admitted to prove title in him, but simply as explanatory of his occupancy of the premises. Mooring & Lyon v. McBride, 62 Texas, 312. The case of Rabb v. McDow is not like this case, in this: the declarations offered in evidence and rejected were not offered to explain the possession of the declarant, but to prove title in him; and this, the court held, was not permissible.

Without reference to the testimony of the witness Pierson, as given in the statement of facts, we think the court did not err in excluding from his consideration, in determining the issue of tenancy, the alleged written acknowledgment of Josiah Johnson, on the ground that its execution had not been proved. The facts recited in the bill of exceptions show unmistakably that Pierson knew nothing of the execution of the paper,

except what had been stated to him by George Dailey, when the latter delivered to him, as the agent of Daniel Dailey, his title papers to the land.

The motion is overruled.

*Motion overruled.*

Delivered November 16, 1893.