**BURTON et al. v. WHEELER et al.**

No. 4060.

Court of Civil Appeals of Texas. El Paso.

March 27, 1941.

Rehearing Denied April 17, 1941.

322

Minor W. Pitts, Seale & Wood, and Ward & Brown, all of Corpus Christi, for appellants.

Richard T. Davis and Boyle, Wheeler, Gresham & Terrell, all of San Antonio, for appellees.

SUTTON, Justice.

This is an appeal from the District Court of San Patricio County. The parties will be designated as in the trial court.

The plaintiffs, E. O. Burton, Lucy Florence Thorson, joined by her husband, Oscar Thorson, Ruth K. Butler, joined by her husband, John H. Butler, and J. L. Burton, sued the defendants, J. D. Wheeler, as trustee and individually and as the representative of a large class of persons in the approximate number of 6,000 called "Contract Holders," of which Wheeler is alleged to be one, to recover some 45 town lots in the town of Aransas Pass, and some 17 out lots and farm lots situated in San Patricio and Aransas Counties. The trial was to a jury and on the verdict of the jury the court rendered judgment for the defendants, from which judgment the plaintiffs have perfected this appeal.

Plaintiffs' petition was in two counts. In the first count they sued in trespass to try title; in the second count they seek to recover as the beneficiaries or reversioners under certain trust agreements and deeds, as will more fully appear from this opinion.

The defendant Wheeler answered for the defendants with a general demurrer, general denial, plea of not guilty, and a special answer wherein he pleaded a certain trust, and a judgment of the District Court of San Patricio County construing said trust, which will likewise more fully appear from the discussion thereof in this opinion. He also pleaded the four, ten and twenty-five years' statutes of limitation, but made no proof under such pleas and no issues were submitted thereon, of course. Wheeler pleaded certain deeds and a power of attorney executed by certain trustees for the plaintiff E. O. Burton and his then partner, A. H. Danforth, as an estoppel against the plaintiffs. These instruments will likewise be discussed in this opinion.

In 1908 and 1909 the plaintiff, E. O. Burton, and A. H. Danforth, as partners and operating under the firm name of Burton & Danforth, owned a large number of town lots in the town of Aransas Pass, Texas, and 8,000 acres of land adjacent to the town of Aransas Pass. Under a plan or scheme devised by them they undertook to sell, and did sell, much of said property.

Prior to December 10, 1909, Burton & Danforth sold some 6,000 contracts to as many purchasers which entitled such purchasers to participate in a public auction sale of said property held at Aransas Pass, commencing on or about December 10, 1909. We copy portions of the contract, as follows:

"Witnesseth:

"That Burton & Danforth agree to sell and party of the second part agrees to buy, one share, the same entitling the party of the second part to one lot in the town of Aransas Pass, Texas, according to the official plat thereof, and being an undivided interest in the total number of lots in said town and 8000 acres of land lying adjacent to said town, together with improvements thereon that are further described on the reverse side of this contract. It is understood that there will be as many undivided interests sold as there are lots in the town

of Aransas Pass owned or controlled by Burton & Danforth, and each contract holder is entitled to one lot or lot and tract of land for each paid up contract held by him.

"The party of the second part agrees to pay Burton & Danforth the sum of One Hundred Dollars ($100.00) payable at their office at Aransas Pass, Texas, Ten Dollars ($10.00) cash, receipt of which is hereby acknowledged, and Ten Dollars ($10.00) per month for nine months, without interest.

"The rules printed on the back hereof are to constitute a part of this contract."

"Rules

" *        *        *        *        *        *

"3. When the contract holders and their representatives have assembled at Aransas Pass on the day of the opening they shall elect from their number three trustees to receive the property.

"4. Burton & Danforth will then and there convey to the said trustees one business or residence lot in the town of Aran· sas Pass for each paid-up contract, and shall also convey to the said trustees 600 five-acre tracts, 300 ten-acre tracts and 100 twenty-acre tracts of land, and shall deliver to the said trustees an abstract of title showing the entire property to be free from incumbrance.

"5. *        *        *        *        *        *

"6. The trustees shall appoint an auctioneer who shall sell each tract of land with one lot, and each improved and unimproved lot to the highest bidder, making as many specific sales as there are paid-up contracts. The tracts of land will be disposed of in connection with the least valuable lots. The improved lots, bay-front lots and most valuable residence lots will be sold singly with no land.

"7. The party of the second part when he has paid $100 on this contract, is entitled to bid in a lot improved or unimproved or tract of land at the auction sale. Having paid the amount he has a credit of $100 on any property knocked down to him by the auctioneer.

"8. The proceeds derived from the auction sale over and above the amount of $100 bid on any tract of land and lot, or lot improved or unimproved, shall be equally divided among all contract holders.

"9. No person not a contract holder shall have the right to bid at the auction sale, and no person can buy at the auction sale more lots than he holds contracts for.

"10. Should any contract holder make first payment and refuse or neglect to make subsequent payments, then he has forfeited to Burton & Danforth any and all amount he has paid and the contract shall be cancelled.

"*        *        *."

The contract holders assembled at Aransas Pass December 10, 1909, under the provisions of the contract elected W. Amos Moore, of San Antonio, O. J. Dutton, of Kansas, and W. H. Wilcox, of Woodward, Oklahoma, trustees to receive the conveyance of the property from Burton & Danforth. The deed to them was executed on that date. The deed recited: "Whereas, Burton and Danforth, a firm composed of E. O. Burton and A. H. Danforth, being the owners of certain lots in the town of Aransas Pass and certain lands adjoining said town in the Counties of San Patricio and Aransas, in the State of Texas, did sell to various and sundry persons shares in said property; each share being an undivided interest in the total number of lots in said town, and eight thousand (8,000) acres of land adjacent to the said town, owned by Burton and Danforth, together with improvements thereon; *        *        *"

It likewise embraced Rules 3, 4 and 12, of which 3 and 4 are copied above, and contained the following warranty: "We, the said E. O. Burton and A. H. Danforth, do hereby bind ourselves, our heirs, executors and administrators to warrant and forever defend all and singular said premises unto the said W. Amos Moore, O. J. Dutton and W. H. Wilcox, Trustees as aforesaid, the survivor or survivors of them, their successor, successors or assigns, and especially to the parties or persons to whom the same may be conveyed by the said Trustees, their survivor or survivors or substitutes, and their heirs and assigns against the claim or claims of any and all persons whomsoever claiming or to claim the same or any part thereof."

The deed contained the following reservation: "But it is expressly agreed and stipulated herein that should any contract holder fail or refuse or neglect to make any of the payments that may be due from him on any lot or farm tract purchased by him in accordance with the terms of his contract, and his said purchase become forfeited on that account after the auction

sale shall take place as provided by the Rules hereinbefore mentioned, then the said Trustees shall reconvey all such lots and farm tracts as may become so forfeited to the said Burton and Danforth or their assigns, when requested so to do by them; and should there be any lots, tracts or parcels of land conveyed herein, which is not required or used in the conveyances to the contract holders by the Trustees, then said Trustees shall reconvey all such unused lots, tracts or parcels of land to the said E. O. Burton and A. H. Danforth or their assigns."

As we understand the plan, a contract holder was entitled to bid and buy at the sale one lot or a lot and tract, as the case might be, for each contract he held. In the event a bidder and purchaser bid and paid more than $100 for a lot, or lot and tract, the amount in excess of $100 was deposited to a fund called the "Overbid Fund," and was to be distributed equally among the paid-up contract holders. At the sale many overbids were made. Some of those who overbid did not pay in full and were granted extension of time in which they might pay in full. The last extension expired October 1, 1910. The extensions were authorized by the contract holders. Under the provisions of the contract and deed of trust to Moore, Dutton and Wilcox, the trustees just named reconveyed to Burton & Danforth, by deed dated October 20, 1910, certain of the property not disposed of. At the expiration of the last extension, October 10, 1910, there were a number of overbid purchasers who had not paid in full. The trustees, Moore, Dutton and Wilcox, offered the delinquent property for sale at a public sale October 20, 21 and 22, 1910. The bidding was so low the trustees bid in certain portions thereof for the benefit of the contract holders. Notwithstanding the contracts and resolutions Burton & Danforth insisted that all bidders who had paid $100 on their bids should have a lot. An average lot was selected by the trustees and conveyed by them to such bidders. Such bidders and contract holders were not permitted to participate in the "Overbid Fund." All the several recitations of fact last made are embodied in the deed from the trustees to Burton & Danforth. The deed further recited: "and in order to protect all the contract holders, and especially those who had complied with their contracts and entitled to participate in the overbid fund, we have this day conveyed to W. Amos Moore, naming him as our agent and attorney-in-fact, all of the lots, tracts, and parcels of land purchased by us as trustees at the sale at Aransas Pass on October 20th, 21st and 22nd, less the lots, tracts and parcels of land conveyed to the contract holders, and instructed him, the said W. Amos Moore, to sell said property upon certain conditions and for such price as he might think proper, and apply the proceeds to said overbid fund."

The deed dated October 20, 1910, aforesaid, further recited: "It being intended by this conveyance to reconvey unto the said E. O. Burton and A. H. Danforth all of the lots, tracts and parcels of land described in said deed in trust which have not been by us conveyed as aforesaid, and that there might be no mistake as to the town lots, tracts, and parcels of land conveyed to various and sundry persons under and by the terms of said deed in trust, and to the said W. Amos Moore as attorney, we do hereby except from this conveyance as being the property which we have heretofore conveyed to contract holders and purchasers at said auction sales, and to said W. Amos Moore as attorney, the following described property, the town lots situated in the town of Aransas Pass and are numbered, marked, and described in accordance with the map or plat of the town of Aransas Pass prepared for said Burton & Danforth by P. L. Telford and is on file in the county clerk's offices of said San Patricio and Aransas Counties, Texas, and the out lots, farm tracts, and parcels of land are here marked, designated, and described as shown upon the map or plat of the out lots, farm tracts, and parcels of land which maps prepared by P. L. Telford, civil engineer for Burton & Danforth, are filed in said clerk's offices, to which maps reference is hereby made for better description of said property, the lots and tracts of land sold by us are described as follows, the lots referred to in the town of Aransas Pass as having been conveyed by us are as follows:" (Here follows lengthy description of property.)

On the same date, October 20, 1910, Moore, Dutton and Wilcox executed a power of attorney to W. Amos Moore, authorizing him to sell the property left in hand and excepted from the deed made by them to Burton & Danforth. This power of attorney recited the material facts recited in the deed, and in addition thereto,

the following: "Whereas, it is deemed necessary by us that said property shall be placed in the hands of some one for sale, the proceeds of which, after all expenses of selling same have been paid to be applied to the overbid fund, which is to be participated in by all contract holders who have fully complied with their contracts of purchase at the December sales, at Aransas Pass in 1909: * * *"

We take it the purpose of this proceeding was to protect the "Overbid Fund" against loss to the contract holders and compensate them for the "undivided interest in the total number of lots and 8000 acres of land."

Mr. E. O. Burton, the plaintiff herein, testified the deed and power of attorney dated October 20, 1910, were prepared in the office of Burton & Danforth, held there and finally forwarded from that office to the County Clerk to be recorded on or about June 6th and 8th, 1911. He also testified the property involved in this suit was excepted from the deed to Burton and Danforth.

The property here involved was conveyed by the trustees, Moore, Dutton and Wilcox, December 28, 1912, to J. D. Wheeler, H. Brooke, J. J. Todd and W. H. Young. The consideration is recited to be $100 cash and other valuable considerations. The deed is absolute on its face and recites no purpose or capacity. It contains a warranty, and refers to the deed of trust dated December 10, 1909, for the authority.

Plaintiffs pleaded and offered proof to the effect that this conveyance was made in trust for the sole purpose of making up a deficit in a bonus required by the S. A. U. & G. Ry. Co., to build a line of its railway into Aransas Pass, and to be conveyed to the railway company when the line had been so built, and not until then and for no other purpose; that the road was not built and they were entitled to recover the property. This was the substance of their second count in their petition. The defendants contend the property was for the benefit of the contract holders as recited in the deed and power of attorney dated October 20, 1910; that it was by agreement sold at public sale December 28, 1912, and conveyed to them as trustees (those named as grantees) to be devoted to any public purpose calculated to benefit the town of Aransas Pass, the contract holders and the public in general. A suit was instituted

for the purpose of having the trust construed and resulted in the judgment referred to, construing the trust to be as contended by the defendants.

The suit, styled C. S. Bolton et al. v. W. H. Young et al., No. 3813, was instituted by a number of citizens of Aransas Pass, who were likewise contract holders. They alleged the property here involved and conveyed by the deed dated December 28, 1912, was in trust for the following purposes, to-wit: For the establishment and construction of a hotel, cotton compress, storage warehouse, recreational park, railroad or interurban, building into or out of town, or any other industrial plant or public building having as its object the development of the town of Aransas Pass. The judgment established the trust as sought. The plaintiff E. O. Burton was not a party to the suit.

The charge of the court submitted special issues covering the two trust theories presented by the plaintiffs and the defendants. The jury found against the plaintiffs and in favor of the defendants.

■ The plaintiffs have 43 assignments of error and six propositions thereunder. As stated by plaintiffs (appellants) in their brief, their chief complaint is against the admission in evidence of the petition and judgment in cause No. 3813 brought to construe the trust. Other propositions go to the objections leveled by plaintiffs to various issues submitted by the court to the jury. We think the petition and judgment were improperly admitted in evidence. Under our view of the case, however, we think the error harmless.

■ Burton & Danforth under the purchase contracts were entitled $100 for each lot. Any and all sums bid in excess of $100 became a part of the "Overbid Fund" which was the property of the contract holders and subject to distribution equally between them. The evidence introduced by plaintiffs themselves establishes the fact that $100 had been paid on each lot and tract sued for herein. In other words, Burton & Danforth had been fully paid for all such lots and tracts. The forfeiture, therefore, for failure to pay the amount overbid was not in favor of Burton & Danforth, but for the benefit of the "Overbid Fund," that is, the contract holders who had fully complied with their contracts. Burton & Danforth had no interest, equitable or otherwise.

Burton & Danforth, by virtue of the recitations in the deed dated October 20, 1910, and the power of attorney of the same date, had knowledge of the fact the property involved had been offered for sale and bought in by the trustees for the benefit of the contract holders and that it was then being offered for sale for the benefit of the "Overbid Fund" and such contract holders. They had notice from April 29, 1913, the date the deed from the trustees to J. D. Wheeler and others was recorded in San Patricio County that the title was in the grantees unconditionally. It is true plaintiffs pleaded the conveyance was to make up the deficiency of the railroad bonus. Mr. Burton testified, however, that it was known there was no effort made subsequent to 1916 to obtain the building of a railroad and that none would be built.

■ Under the most favorable construction of the terms of the several instruments and his own evidence, the most the firm had was an equitable right to acquire the title to the property involved by a reconveyance to them. That they never sought prior to the filing of this suit in 1937 to have the title reconveyed to them. We think the doctrine of laches and stale demands applicable to this cause and that defendants' request for an instructed verdict should have been granted. Johnson v. Newman, 43 Tex. 628, 642. "When one who has only a contract for the execution of title sleeps upon his rights until after the period in which a court of equity would have given relief by decreeing him title, the plea of stale demand is a complete defense to his suit." Trinity Co. Lbr. Co. v. Pinckard, 4 Tex.Civ.App. 671, 23 S.W. 720, 724, 1015; Lochridge v. Corbett, 31 Tex.Civ.App. 676, 73 S.W. 96, 100. "A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court." Withrow v. Walker, 81 Iowa 651, 47 N.W. 893, 895. The recitals in the deed and power of attorney dated October 20, 1910, disclosing the disposition of the property involved in this suit was with the consent of Burton & Danforth, as was the conveyance of an average lot to all who had paid $100 on a contract, or a breach of and repudiation of the trust which called for prompt action. Their failure for so long a time constitutes laches and this suit a stale demand under the facts and circumstances here.

There is no error in the rendition of the judgment, and it is affirmed.