ALFRED GILKEY, ADM'R, V. SARAH PEELER, ADM'X.

The husband is not a competent witness for the defendant, in a suit against the administratrix of an estate, for the recovery of property, claimed by her as belonging to the estate, and in which estate his wife, would be entitled to a distributive share, as an heir of the intestate.

Where a party takes the depositions of a witness, incompetent to testify on account of interest, and the opposite party (who has propounded cross-interrories to the witness,) offers the depositions in evidence, the party taking such testimony cannot object to the competency of the witness, nor exclude the depositions on that ground.

It is well settled, that if a party know that a witness is interested, he will not be permitted to examine the witness, and afterwards to object to his competency, if he should dislike his testimony. The rule is the same in equity and at law, and is applied equally to testimony given in a deposition in writing, and to an oral examination in court.

Where the issues to be determined, involved the question, as to whether the property sued for belonged to the plaintiff's intestate at her death, or had been given previously to the defendant's intestate, and whether the possession of the defendant's intestate, after the death of the alleged donor, was held in his own right, or in right of his wife, as one of the heirs of the alleged donor: *Held*, that these were questions of fact, to be decided by the jury. There being conflicting testimony, the refusal to give such instructions as correctly submitted the law by which they should be determined, was error.

If there be a question of fact for the decision of a jury, though the weight of evidence may be against one of the parties, if it be not so conclusive as to warrant the court in withdrawing the question from their consideration, it is the right of the party to have them informed upon the law, as applicable to either conclusion of fact they may think proper to adopt.

Where property to which several heirs are entitled, is taken and held by one of them, the possession is, *primâ facie*, deemed to be the possession of all the heirs, and to be held in trust for them.

Such possessor cannot avail himself of the statute of limitations, against the other heirs, unless he took and held possession, under a claim of exclusive right. His possession must have been openly adverse to the other heirs. Mere acts of ownership are not sufficient to establish such adverse possession.

APPEAL from Lavaca. Tried below before the Hon. Fielding Jones.

This suit was brought by the appellant, as administrator of the estate of Rebecca Gilkey, deceased, against the appellee,

as the administratrix of the estate of James Peeler, deceased, for the recovery of a negro man, named Nelson. The defendant answered by a general demurrer; a general denial; by a plea, setting up property in her intestate, by gift from Rebecca Gilkey; and a plea of the statute of limitations.

It was proven on the trial, that Rebecca Gilkey was the sister of Sarah Peeler, the appellee, and that James Peeler, deceased, was her husband. It was also proven that Rebecca Gilkey died in September, 1852; that she brought the said negro, (with others,) with her to this country, when she moved from Louisiana to Upshur county, in company with Peeler, and another sister, Elizabeth Gilkey. No question was made as to her right and title, except so far as the same might have been affected by the alleged gift, or the possession claimed by the defendant and her intestate. It was proven that Rebecca was an unmarried lady, that she died at the age of about sixty years, and that her father and mother were reputed to be dead.

In the fall of the year 1853, Peeler removed from Upshur county to Western Texas, taking with him the negro in controversy. At the time of the death of Rebecca Gilkey, Peeler lived within three quarters of a mile from her. There was testimony that James Peeler, previously, and up to the death of the plaintiff's intestate, managed her business, hired out the negro in question, and two others that belonged to her. There was testimony tending to show a gift from Rebecca Gilkey to James Peeler. Ormond Harris testified, that on the 4th day of July, 1852, in a conversation with her, in reply to an inquiry of his, "if she was willing that the negro man should be "traded," she replied, "that she did not care what was done "with him, that she had given him to James Peeler, and that "he might trade him, or keep him, as he pleased." This witness further stated, that during the time he knew James Peeler, in Upshur county, and in Lavaca county, he had possession of and claimed the said negro up to the time of his death. Nancy E. Eastly testified, that she had heard Rebecca Gilkey say, that

she intended James Peeler to have the said negro, Nelson, at her
death, that she did not intend he should lose anything for
taking care of her. And several years previous to her death,
heard her tell Peeler to take the negro, and sell him, or
do what he pleased with him; to which he replied, that he did
not want to sell him, but would hire him, which he did. On
cross-examination, she said, "that Rebecca Gilkey claimed the
"negro, but had previously given him up to James Peeler, and
"said she would not have anything to do with him, therefore
"James Peeler exercised ownership over him at her death."
And in answer to an interrogatory, whether Rebecca Gilkey
did not claim the negro, Nelson, as her property, and exercise
such control, as the owner, up to the time of her death, the wit-
ness said that "she claimed him, but James Peeler *expressed*
"[as the record has it,] ownership or control of him, as the
"owner of a slave would, up to the time of her death."

Pleasant Harris, (a son-in-law of the defendant,) testified,
that James Peeler had possession of the negro, Nelson, from
1849 to the time of his death, and claimed him as his own;
that, during her lifetime, he hired out the said negro, and
two others of Rebecca's; that he did not hire out his own
negroes; and that Peeler died on the 10th June, 1855. Never
heard James Peeler claim the said negro, or set up any claim,
in the presence of any of the heirs of Rebecca or the plaintiff.

Aaron Roberts, a witness for the plaintiff, testified that Re-
becca Gilkey and her sister, Elizabeth Gilkey, lived together
at her death; that the negro man, Nelson, was in their posses-
sion; that the boy, Nelson, was called her (Rebecca's) negro;
and that after the death of Rebecca Gilkey, the said slave re-
mained in the possession of Elizabeth Gilkey, until James Peeler
started to Western Texas, when he took Nelson with him.

John T. Eastly, a witness in behalf of the plaintiff, testified
that the plaintiff's intestate claimed the negro as her property,
and exercised such control over him, as the owner of a slave
would, up to the time of her death.

The plaintiff introduced the inventory, filed in the County

Court of Lavaca, of the estate of James Peeler, deceased, from which it appeared, that the said slave was not included in the list of property belonging to his estate.

On the trial, the defendant examined as witnesses, Pleasant S. Harris and G. B. Harris, who, on their *voir dire*, stated that they were the sons-in-law of the defendant, and that their wives were heirs of the estate of James Peeler, deceased, which had not been distributed. The plaintiff objected to their introduction as witnesses, on account of their interest. Objection overruled, and witnesses examined; to which plaintiff excepted.

The plaintiff offered to read, during the trial, the depositions of Elizabeth Gilkey, the sister of the defendant, which had been taken by the defendant; and to the interrogatories propounded by defendant, the plaintiff had filed cross-interrogatories. To the reading of which the defendant objected, and the objection was sustained; to which ruling the plaintiff excepted.

The court charged the jury as follows: "If you believe, from "the evidence, that Rebecca Gilkey gave Nelson, the boy in "question, to Peeler, and delivered him into his possession, and "that he claimed and used the negro as his own from that time, "the gift would be a good and valid one, and you should find "for the defendant. We further charge you, that if you believe, "from the evidence, that James Peeler, during his lifetime, and "the defendant, since his death, have had two years' peaceable, "adverse possession of the negro in question, and claimed openly, "notoriously and continuously, for the space of two years next "preceding the institution of this suit, then the right of the "plaintiff would be barred, and you should find for the defen- "dant. If you believe, from the testimony, that Peeler did not "claim the negro in question, as his own, but whilst he held "him in possession, still openly acknowledged the right of the "plaintiff's intestate, then you should find for the plaintiff."

The plaintiff's counsel asked the court to give the following instructions: "If the jury find, from the evidence, that Rebecca "Gilkey died, leaving no surviving husband, children, nor their "descendants, nor father or mother, then all of her estate

"descended and vested in her brothers and sisters in parcenary;
"that no limitations would begin to run in favor of one co-par-
"cener, as against his or her fellow parcener, until after notice
"to the other co-parceners, of such intention to hold adversely
"to them. Mere possession would not be a sufficient notice, in
"such case, to constitute an adverse holding.

"To constitute a valid parol gift, the thing given must accom-
"pany the gift; the mere expression of an intention to give, at
"the death of a party, is not a gift, in contemplation of law.

"To constitute a valid gift, the possession of the donee must
"be such, as would entitle him to sustain an action for the
"recovery of the thing given, against the donor, as well as
"against any other person."

These instructions the court refused to give. Verdict and
judgment for the defendant. Motion by plaintiff for new trial,
and overruled.

*R. M. Tevis,* for appellant.

WHEELER, CH. J. The errors relied on, which require notice,
relate to the ruling of the court upon the admissibility of evi-
dence, and the refusal of instructions asked by the plaintiff.

The witnesses, Pleasant and G. B. Harris, were sons-in-law
of the defendant. Their wives would be entitled to a distribu-
tive share of the estate of the defendant's intestate, in whose
right she claimed the property in question. It is a general rule
of evidence, that if the effect of a witness's testimony will be to
create or increase a fund in which he may be entitled to partici-
pate, he is incompetent. It is not necessary that the interest
of the witness in the fund should appear to be necessarily and
inevitably affected. If such may be the result, he cannot be
allowed to testify. (Cowen and Hill's Notes, Part 1, note 84, p.
93; Johnson v. Alexander, 14 Tex. Rep. 382.) It is clear,
therefore, that the wives of the witnesses would have been in-
competent, from interest, to testify on behalf of the defendant.
And the rule is, that where the husband or wife has an interest
directly involved in the suit, and is therefore incompetent to

testify, the other is also incompetent. The husband cannot be a witness for or against his wife, in a question touching her separate estate. (1 Greenl. Ev. § 341.) It is clear, therefore, that the witnesses were incompetent to testify on behalf of the defendant, and that there was error in admitting their testimony.

This might suffice for the present disposition of the case; but as it must be remanded, it is material to observe, for the direction of the parties upon another trial, that there was error, also, in the exclusion of the deposition of the witness, Elizabeth Gilkey. She was the sister of the defendant, and her co-heir to the property of the plaintiff's intestate. Her interest was adverse to the right set up by the defendant in this suit, and must have been known to the defendant. Yet the latter proceeded to take her testimony by deposition, and only declined to use it, and objected to the use of it by the plaintiff, when it was found to be adverse to her. It is well settled, that if a party is aware that a witness is interested, he will not be permitted to examine the witness, and afterwards to object to his competency, if he should dislike his testimony. The rule is the same in equity and at law, and is applied equally to testimony given in a deposition in writing, and to an oral examination in court. (1 Greenl. Ev. § 421; Cowen and Hill's Notes to Phil. Ev. n. 113 to p. 154; Johnson v. Alexander, 14 Tex. Rep. 382.)

We think, also, that the instructions asked by the plaintiff might properly have been given. They certainly were correct in point of law, and were not inapplicable to the evidence. Whether the slave in controversy was the property of Rebecca Gilkey at the time of her death, and whether the defendant's intestate took and held possession of the slave, in his own right, or in the right of his wife, as heir of Rebecca, were questions to be decided by the jury. If the right was in the wife, the present defendant, as heir, and the possession was taken and held in her right, it would be deemed *primâ facie* the possession of her co-heirs, and to be held by her in trust for them; and to

Gilkey v. Peeler.

rebut this presumption, and enable the defendant to claim the benefit of the statute of limitations in favor of the possession of her intestate, it must appear that he took and held possession under a claim of exclusive right. His possession must have been openly adverse to the heirs; and mere acts of ownership, in such a case, are not sufficient to establish such adverse possession. (Alexander v. Kennedy, 19 Tex. Rep. 488.) Instructions to this effect may have been refused, on the ground that they were not called for by the evidence, because it tended to prove that the possession was taken by the defendant's intestate in his own right. But though the weight of evidence may have supported this opinion, it was not so conclusively proved, it is conceived, that the court would feel warranted in withdrawing the consideration of the question from the jury; and if a question for their decision, it was the right of the parties to have them informed upon the law, as applicable to either conclusion of fact they might think proper to adopt.

The judgment is reversed, and the cause remanded for further proceedings.

Reversed and remanded.