## GIBBS v. EASTHAM.†

(Court of Civil Appeals of Texas. Amarillo. Dec. 2, 1911. Rehearing Denied Jan. 5, 1912.)[1]

1. APPEAL AND ERROR (§ 704*)—PRESENTATION BELOW.

Sayles' Ann. Civ. St. 1897, art. 1333, provides that the court shall, on request, state conclusions of fact and law separately, and the conclusions shall constitute a part of the

record, and it shall be sufficient for the party excepting to the conclusions of law or judgment to cause it to be noted in the judgment entry that he excepts, when he may appeal without a statement of facts or further exceptions, but the transcript shall contain the conclusions of fact and law. Courts of Civil Appeals Rules, rule 27 (67 S. W. xv), provides that in cases submitted to the judge upon the law and facts the assignments of error shall be governed by the same rules as in other cases, and rule 28 (67 S. W. xv), provides that no assignments of error will be allowed in the appellate court where none is filed below, and District and County Court Rules, rule 101 (67 S. W. xxvii), requires appellant to file his assignments of error in the trial court as prescribed by statute, and permits appellee to file cross-assignments with his brief which may be incorporated therein, and need not be copied in the transcript, but that in such case a copy filed in the Court of Civil Appeals shall contain a certificate of the Trial Court showing that it is a copy of the brief filed. *Held,* that where in a trial by the court appellee did not complain below of the findings of fact or conclusions of law, or file cross-assignments of error below, or in his brief on appeal, merely attacking the findings by quoting from the statement of facts, the Court of Civil Appeals cannot review the sufficiency of the evidence to support the findings.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2939–2941; Dec. Dig. § 704.*]

2. VENDOR AND PURCHASER (§ 227*)—BONA FIDE PURCHASER.

Defendant was not an innocent purchaser of land for value if for several years before he purchased, and at that time he had actual notice of plaintiff's claim of ownership.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 474; Dec. Dig. § 227.*]

3. VENDOR AND PURCHASER (§ 231*)—BONA FIDE PURCHASER—CONSTRUCTIVE NOTICE—RECORDED DEED.

Defendant was not an innocent purchaser of land for value under the statute where, when he purchased from an independent executrix, deeds were on record, showing that decedent did not own the lands when his will was executed.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 513–539; Dec. Dig. § 231.*]

4. VENDOR AND PURCHASER (§ 231*)—NOTICE—RECORDING SUBSEQUENT DEED—SAME ORIGIN OF TITLE.

Since Sayles' Ann. Civ. St. 1897, art. 4640, making unrecorded deeds void as to subsequent purchasers for value without notice, only includes subsequent purchasers in the chain of title, the origin of whose title is subsequent to the title of the grantee in the recorded deed, plaintiff, claiming under an unrecorded conveyance from a decedent, was not charged with notice of a recorded deed subsequent in point of time from decedent's independent executrix.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 513–539; Dec. Dig. § 231.*]

5. ADVERSE POSSESSION (§ 31*)—TITLE BY LIMITATIONS.

Ordinarily title by limitations may be acquired without reference to whether the real owner has notice of the doing of those things which under the statute matures the title by limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 128–133; Dec. Dig. § 31.*]

---

[1] Filed in the Court of Civil Appeals for the Second Supreme Judicial District at Ft. Worth February 25, 1911, and transferred to this court by order of the Supreme Court of Texas July 1, 1911.

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error granted by Supreme Court.

**6. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION—AGREEMENTS BETWEEN COTENANTS.**

An agreement by one cotenant with another to assume control and management of the property as such for both of the cotenants would inure to the benefit of the successive owners of the interest of such other cotenant, placing the managing cotenant in the same fiduciary relation as regards adverse possession to such successors as to the original cotenant with whom he made the agreement until it was expressly repudiated.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

**7. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION.**

Where a tenant in common held the exclusive control of land under an agreement with his cotenant, limitations would not begin to run against the latter or his successors until they had actual notice of the claim of ownership of the tenant in possession.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

**8. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION—NOTICE.**

While actual notice of a claim of ownership by one tenant in common against his cotenant may be made by circumstances as well as by direct proof, possession by one cotenant and payment of taxes and other acts not inconsistent with a holding for the joint benefit would not, if known to the other cotenants, raise a presumption of an adverse claim, it being essential that the cotenants out of possession be given either express notice or have knowledge of such unequivocal act as would raise a presumption that the possession was adverse.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

Appeal from District Court, Haskell County; Cullen C. Higgins, Judge.

Action by J. D. Gibbs against L. C. Eastham, in which defendant filed a cross-complaint. From a judgment for defendant on his cross-complaint, plaintiff appeals. Reversed and judgment rendered in part for plaintiff, and cause remanded for further proceedings.

See, also, 125 S. W. 372; 139 S. W. 1166.

Helton & Murchison and A. H. Kirby, for appellant. H. G. McConnell, P. D. Sanders, and Dean, Humphrey & Powell, for appellee.

GRAHAM, C. J. Appellant, J. D. Gibbs, began this suit against appellee, L. C. Eastham, in the district court of Haskell county on April 6, 1908, for partition or division of 80 acres of land, described in his pleading, alleging that appellant and appellee each own an undivided one-half interest therein. On May 23, 1908, appellee answered, denying that appellant had any interest in the land, pleaded a cross-action of trespass to try title for the entire 80 acres, and also pleaded the statutes of limitations of three, five, and ten years as a bar to appellant's recovery of any part of the land. The case was tried before

the court without the intervention of a jury, who on November 30, 1910, rendered judgment for appellee for the entire 80 acres of land, from which judgment the cause is before this court on appeal. The trial court filed findings of fact and conclusions of law, and, as our judgment will be based thereon, they will be copied herein, and are as follows:

"(1) It was admitted that plaintiff and defendant claimed title under W. R. Moore as common source of title.

"(2) That land in controversy is a part of the Peter Allen survey patented to heirs of Peter Allen, deceased, by patent No. 365, vol. 17, dated December 31, 1866.

"(3) On March 18, 1890, W. R. Moore, the common source of title, conveyed to W. R. Gibbs and L. C. Eastham the 80 acres of land in controversy, described in said deed as follows: 'All that certain tract or parcel of land situated in Haskell county, Texas, being eighty acres known as block 128, subdivision of the Peter Allen ⅔ league survey, No. 140, abstract No. 2, certificate No. 136, patent No. 165, vol. 17, as shown by map of said subdivision recorded in Book M—7, pages 222, 3 and 4, deed records of Haskell county, Texas, said deed duly acknowledged and recorded in Haskell county, Texas, April 8, 1890'—and said 80 acres is the land in controversy.

"(4) On January 17, 1895, by deed in trust and preferential deed of assignment, W. R. Gibbs conveyed his undivided one-half interest in the land in controversy, and other lands in Haskell and Baylor counties, owned by him jointly with defendant L. C. Eastham, and all of his stock of merchandise in Huntsville, Tex., to J. W. Cary, trustee, for the benefit of certain creditors therein named.

"(5) On February 19, 1895, J. W. Cary, trustee, by deed duly executed and acknowledged, and filed for record in Haskell county, Tex., on the 13th day of April, 1895, conveyed to Leon & H. Blum, together with other property conveyed by W. R. Gibbs, to him, an undivided one-half interest in the 80 acres in controversy.

"(6) Leon & H. Blum conveyed an undivided one-half interest in said 80 acres, together with other property above mentioned, to Hyman Blum, trustee, on the 21st day of March, 1895, by deed duly acknowledged and recorded on the 19th day of April, 1895, in the deed records of Haskell county, Tex.

"(7) On February 29, 1896, Hyman Blum, trustee, conveyed said property, including an undivided one-half interest in the land in controversy, to the Leon & H. Blum Land Company by deed duly acknowledged and filed for record in Haskell county, Tex., on April 13, 1896.

"(8) Plaintiff, J. D. Gibbs, purchased all the assets of W. R. Gibbs from Leon & H. Blum as early as 1896, but the undivided

one-half interest in the 80 acres in controversy, together with the lots in Baylor county, Tex., formerly owned by W. R. Gibbs and the defendant, L. C. Eastham, were not conveyed by the Leon & H. Blum Land Company until October 14, 1898, when by quitclaim deed the same was conveyed to plaintiff, Jeff D. Gibbs, which deed was duly acknowledged and filed for record in Haskell county, Tex., on the 22d day of May, 1898.

"(9) On January 31, 1896, W. R. Gibbs executed his last will and testament, which was admitted to probate on October 28, 1897, in Johnson county, Tex., wherein Mrs. Lillian C. Gibbs, wife of W. R. Gibbs, was made independent executrix of the last will and testament of W. R. Gibbs, without bond. W. R. Gibbs died in 1896.

"(10) Lillian C. Gibbs, as independent executrix of the estate of W. R. Gibbs, deceased, executed a deed conveying to defendant, L. C. Eastham, for the consideration of $200, the land in controversy correctly described, this deed bearing date May 19, 1898, duly acknowledged and filed for record in Haskell county, Tex., May 25, 1898.

"(11) For two or three years prior to obtaining this deed from Lillian C. Gibbs, independent executrix, defendant, L. C. Eastham, had knowledge that plaintiff, J. D. Gibbs, had acquired and was claiming the half interest in the property in controversy, as well as other lands formerly owned by W. R. Gibbs, together with defendant, L. C. Eastham.

"(12) That about 1895 L. C. Eastham employed Oscar Martin, an attorney at law at Haskell, Tex., to look after the lands in controversy in this suit, together with some other lands owned in the town of Haskell, Haskell county, Tex., one W. H. Gibbs at that time owning a half interest in all of said lands, and L. C. Eastham employed said Martin to take possession of the 80 acres of land, block 128 and to fence it and lease it, and that said Martin did fence it in July, 1898, and leased it for the use and benefit of L. C. Eastham, and also rendered and payed the taxes for L. C. Eastham, the defendant, from 1898 until 1904, and continued in possession of it until November 19, 1904. That L. C. Eastham wrote Mr. Martin, and asked him to find out whether or not W. R. Gibbs had ever transferred his half interest in the 80 acres of land in controversy or not, and that he, Martin, did make an examination of the records of Haskell county and reported to defendant, Eastham, that he found no transfer of any kind, and that was prior to 1898.

"(13) L. C. Eastham, defendant, was approached by one Col. Clayton, said Clayton desiring to sell Mrs. W. R. Gibbs' interest in the land in controversy to defendant, Eastham, and said L. C. Eastham, as a matter of precaution, wrote to Oscar Martin in Haskell, requesting him to examine the records and find out if the title was still in Gibbs,

and Mr. Martin wrote to defendant, Eastham, that the title was still in Mrs. Gibbs, and subsequently defendant, Eastham, had her appointed independent executrix under the will of W. R. Gibbs, and bought from her a half interest in this 80 acres for $200, this being the same land that L. C. Eastham and W. R. Gibbs had purchased for $3,200. That L. C. Eastham has claimed the land as his own since the date of the deed from Lillian C. Gibbs, independent executrix, to him, and paid the taxes on it since May 19, 1898, through his agents, Oscar Martin and Sanders & Wilson, claiming not to know of the interest of J. D. Gibbs, plaintiff, until the year 1907; but that J. D. Gibbs, plaintiff, and L. C. Eastham, defendant, carried on business in Huntsville, Tex., in adjoining buildings, and Eastham paid taxes on the land for the years 1896 and 1897 in the name of Eastham and Gibbs, and receipted plaintiff, J. D. Gibbs, for one half of said taxes. In the year 1902 plaintiff, J. D. Gibbs, through his agent, J. E. Allen, requested a statement from the defendant, Eastham, concerning the payment of taxes by him, Eastham, on said property held jointly by said Gibbs and Eastham, including the land in controversy, and Eastham, defendant, promised Allen, agent of Gibbs, that he would have his bookkeeper get up a statement of same; but said statement was never furnished.

"(14) Defendant, Eastham, has not receipted plaintiff, Gibbs, for any taxes since he bought the land from Mrs. Gibbs and obtained deed from her.

"(15) The clerk of the county court of Haskell county, Tex., in recording the deed from Lillian C. Gibbs, independent executrix, to defendant, L. C. Eastham, made a mistake in recording the block number, which was correctly '128' as shown in the face of said original deed, but that the record clearly shows it to be block '28,' and that some one with a lead pencil subsequent to the date of recording of the deed marked on the face of the record and above the block No. 28 the figures '128,' and that the time of this attempted change of the record, or more probably memorandum of reference by some abstractor, is not known, and that this pencil memorandum was discovered during the month of November, 1908, by the clerk of the county court.

"(16) Plaintiff, J. D. Gibbs, without the knowledge of the defendant, L. C. Eastham, bought the assets of the estate of W. R. Gibbs, under the deed in trust, and conducted the business formerly owned by W. R. Gibbs in a house right next door to the business house of defendant L. C. Eastham.

"(17) Plaintiff, J. D. Gibbs, moved to California, where he has resided since October, 1898, and first learned that L. C. Eastham was rendering all of block 128 in his own name for taxes in December, 1904, and would have brought suit sooner than April 6, 1908,

the date of filing plaintiff's original petition herein, for the recovery of the land in controversy, had it not been for a pending compromise settlement between plaintiff and defendant.

"(18) Plaintiff, J. D. Gibbs, has paid other taxes in Haskell county since the year 1904, but has paid no taxes on this block 128, and has not rendered block 128 for taxes, and did not know until December, 1904, that defendant, Eastham, had procured the deed from Mrs. Lillian C. Gibbs, independent executrix.

"(19) Plaintiff's title papers were in the possession of his attorneys, and therefore his deed was not recorded until 1908.

"(20) Ten years had not elapsed since the inclosing of the land in controversy, block No. 128, by L. C. Eastham and his agents and tenants prior to the filing of the suit in this case.

"(21) Under the agreement between W. R. Gibbs and L. C. Eastham, the said L. C. Eastham assumed control of the property in controversy, and rendered it for taxes, and paid taxes on it during the lifetime of W. R. Gibbs, and continued to do so subsequent to that time in the name of Gibbs and Eastham, until defendant, Eastham, bought for a small consideration the claim of Lillian C. Gibbs, after which time the said L. C. Eastham rendered the property in his own name and neither the Leon & H. Blum Land Company nor plaintiff J. D. Gibbs had any actual notice prior to December 14, 1904, of the execution or recording of the deed from Lillian C. Gibbs, independent executrix, to L. C. Eastham, nor of the fact that defendant, Eastham, had inclosed said land, nor that he was rendered and paying taxes thereon in his own name, nor that he was claiming all of said land to the exclusion of his cotenants Leon & H. Blum Land Company, and the plaintiff, J. D. Gibbs, prior to December 14, 1904, had any constructive notice of any of said facts or of the attempted appropriation of said land by defendant, Eastham, to their exclusion as cotenants, except such constructive notice as was given by the recording of the deed from Lillian C. Gibbs, independent executrix, to the defendant L. C. Eastham, dated May 19, 1898, filed for record in Haskell county, Tex., May 23, 1898, duly acknowledged and recorded on pages 170 and 171, vol. 14, Deed Records of Haskell county., Tex., which gave the description of the property incorrectly on the records as being block '28,' instead of block No. '128,' being the correct description, and except such constructive notice as was given by paying taxes in the name of defendant L. C. Eastham only, and receipt of revenue by Eastham, and Gibbs not receiving any of said revenue, nor paying any of the taxes, nor making any inquiry as to the land.

"From the above and foregoing findings of fact, I conclude as a matter of law:

"(1) The filing and recording of the deed from Lillian C. Gibbs, independent executrix, to L. C. Eastham, and fencing and taking possession of the land in controversy by L. C. Eastham and the rendition and payment of taxes on the land by defendant L. C. Eastham in his own name, were acts constituting constructive notice to his contenants Leon & H. Blum Land Company and J. D. Gibbs, the plaintiff, of his repudiation of his cotenancy, and set in motion the statute of limitations in his behalf, and said deed having been filed and recorded since May 23, 1898, and the possession and use of the land and payment of taxes thereon by defendant L. C. Eastham having continued since July, 1898, J. D. Gibbs having received none of said revenues, nor paid any taxes, nor made any inquiry as to said land, during said time, plaintiff's cause of action was barred by the five-year statute of limitation before the filing of this suit, and defendant Eastham is entitled to recover on his cross-action by reason of said five-year limitations, and it is so adjudged by the court following Eastham v. Gibbs, 125 S. W. 372."

No attack was made in the trial court, nor is there made in this court by appellant on any of the findings of fact filed by the court below; and, while appellant urges in this court eight assignments of error, they are all directed to what is claimed by him as being erroneous conclusions of law, reached by the trial court from the facts found; claim being made by appellant that the judgment rendered below is not supported by the facts found, and that, on said facts so found, the judgment should have been for him in accordance with his prayer.

[1] No complaint was filed in any form in the court below by appellee as to either the findings of fact or conclusions of law, nor did he file any cross-assignments of error in the court below, nor has be brought before us in this brief any cross-assignments of error, though he does quote copiously from the statement of facts (which is also on file in this court) in such way as to amount in several particulars to an attack on the court's findings of fact. As we view the matter, however, under article 1333, Sayles' Annotated Civil Statutes of 1897, rules 27 and 28 (67 S. W. xv), for the government of the Courts of Civil Appeals, and rule 101 (67 S. W. xxvii), for the government of district and county courts, neither the appellee nor the appellant has brought the record or their briefs before us in such way as to require, or even warrant us, in going into the question of whether or not the findings of fact as filed below by the trial court are in any particular unsupported by the evidence. As the record is before us, we feel that we are bound to conclusively presume that the evidence introduced on the trial below fully sustains each finding of fact as made by the trial court, and we therefore will dispose of this appeal as if no statement of facts were on file, and on the findings of fact and con-

clusions of law prepared and filed by the trial court.

This case was once before our Court of Civil Appeals, the opinion in which is found in 125 S. W. 372, to which opinion we refer for a concise statement of the chain of record and paper title on which the parties respectively rely. We also adopt the conclusion reached in that opinion, to the effect that the deed from Lillian C. Gibbs as executrix to L. C. Eastham as registered will serve every purpose to appellee in this case that said record could serve if the lands had been described in the records as they were in the face of the deed. The findings of fact filed by the trial court show most clearly that the appellant owns, and should have recovered below, an undivided one-half interest in the 80 acres of land, as well as a partition thereof as prayed for by him, unless his right so to do be defeated either because appellee was an innocent purchaser for value and without notice under our registration laws as a result of his purchase from Mrs. Lillian C. Gibbs, as independent executrix, which was made on May 19, 1898, and the deed placed of record in Haskell county on May 25, 1898, or because of our statutes of limitations of three, five, or ten years, each of which were pleaded by appellee.

[2, 3] We are of the opinion that the judgment below cannot be sustained on the ground that the appellee was an innocent purchaser for value and without notice for reasons mentioned below. It would appear from the trial court's eleventh finding of fact that, when appellee purchased from Mrs. Lillian C. Gibbs and took apparent title from her, he had actual notice of appellant's ownership and claim to the land he purchased from Mrs. Gibbs, and had been in possession of such actual notice for two or three years, though appellant's deed from Leon & H. Blum Land Company, as shown by the court's eighth finding of fact, and which bears date October 14, 1898, was not recorded in Haskell county until May 22, 1898. By the eighth finding of fact it is shown, however, that appellant had purchased the interest in the land formerly owned by W. R. Gibbs as early as 1896. Even if appellee had no actual notice at the time and before his purchase from Mrs. Gibbs, we are of the opinion that appellee could not be an innocent purchaser for value and without notice under our statutes regulating that question, for the reason that appellee claims under the will of W. R. Gibbs and at the time said will was executed W. R. Gibbs owned no interest in the lands, record evidence of which was on the deed records in Haskell county as early as April 13, 1895, as shown in the trial court's fifth finding of fact.

[4] Even if the conveyance from W. R. Gibbs to J. W. Cary, trustee, and no other of the several conveyances in this chain of title, being the one under which appellant claims, had never been placed of record, and appellee had no notice, actual or constructive, of the fact that W. R. Gibbs had parted with his title before executing the will or at the time appellee purchased from Mrs. Gibbs, as we understand the rule announced by our Supreme Court in the case of White v. McGregor, 92 Tex. 556, 50 S. W. 564, 71 Am. St. Rep. 875, appellee acquired no right to the land as against appellants as a result of appellee's chain of title or any link therein having been placed of record in Haskell county. In that opinion, Chief Justice Gaines discusses articles 4640 and 4652, as found in Sayles' Annotated Civil Statutes of 1897, and, after holding that article 4652 adds nothing to the law as it existed prior to the passage of said article, places a construction on article 4640 that would appear to preclude appellee from claiming any advantage as against appellant from the fact that appellee's deed from Mrs. Gibbs had been placed of record or that links in appellant's chain of title had not been placed of record. We therefore hold that the judgment of the trial court cannot be sustained on the ground of appellee having been an innocent purchaser for value, and without notice from Mrs. Gibbs.

The trial court in his conclusions of law, as we construe them, found against appellee on his pleas of the statute of limitations of three and ten years, and we hold that, under the record, appellee failed to show a right to recover under either of the three or ten year statute of limitations pleaded by him. The conclusions of law reached by the trial court show, further, that the judgment for appellee was based on the fact that the trial court believed appellee had by his proof sustained his plea of limitation of five years, and, if the trial court's judgment is sustained, it must be on this ground. The trial court in his seventh and twenty-first findings of fact finds that neither appellant nor the Leon & H. Blum Land Company had any actual notice of the execution or recording of the deed from Lillian C. Gibbs to L. C. Eastham, or of any of the other acts and things on which appellee relies for notice to appellant of the fact that appellee was asserting a claim to appellant's interest in the land, hostile to appellant's rights therein, until December, 1904; and the trial court also having found in his twenty-first finding of fact that neither the Leon & H. Blum Land Company nor appellant prior to December, 1904, had any constructive notice of any adverse claim set up by appellee to appellant's interest in the land, except such as flowed from recording the deed from Lillian C. Gibbs as executrix in Haskell county, on May 23, 1898, and as flowed from appellee having fenced and taken possession of the entire 80 acres, and rendering and paying taxes thereon in his own name, and receiving the entire revenue therefrom.

[5] As in ordinary cases title under our limitation laws can and will be acquired without reference to the question of whether the

real owner has notice that the things are being done which under our statute mature a title by limitation, it remains to be seen whether under the facts in this case a title by limitation could be acquired by appellee to appellant's interest in the land, in the absence of actual notice on the part of appellant of the fact that appellee was asserting a claim to appellant's interest hostile to appellant for a period of time necessary to mature a title by the five-year statute of limitation.

[6] The findings of fact of the trial court from one to ten, inclusive, show that appellee and appellant became joint tenants in the land on October 14, 1898; that from May 18, 1890, to October 14, 1898, appellant had successively been a joint tenant with W. R. Gibbs, Leon & H. Blum, Hyman Blum, the Leon & H. Blum Land Company, and appellant in the order named; and the fifth and twenty-first findings of fact by the trial court show that while the joint tenancy between appellee and W. R. Gibbs and as early as April 13, 1895, by agreement between W. R. Gibbs and appellee, appellee assumed control and management of the property as said joint tenant, and continued in his said management and control as a joint tenant until he took the deed from Lillian C. Gibbs, as executrix in 1898, when, for the first time, he conceived the idea of asserting an ownership to the entire property.

The trial court in his eleventh finding of fact, when considered in connection with his tenth finding of fact, shows that appellee had known for two or three years prior to May 19, 1898, the date he purchased from Mrs. Gibbs, that appellant had acquired and was claiming a half interest in the land (and, as appellee was bound to know that he owned a half interest in it), it follows that he knew that appellant had acquired and was claiming the interest formerly owned by his former joint tenant, W. R. Gibbs.

It is also shown in the court's thirteenth finding of fact that in 1902 appellant, through his agent, Allen, requested of appellee a statement concerning the payment of taxes, which appellee had made on said property, and that appellee promised said statement, but had never furnished same.

[7] From the foregoing we find that as a matter of fact, as well as of law, when appellee assumed the exclusive management and control, as well as the right of possession of the entire property, under the agreement with W. R. Gibbs, he did so as agent and representative of himself and his then tenant in common and in a trust capacity; that the agreement so made with W. R. Gibbs by appellee inures to the benefit of each of the successive owners of the W. R. Gibbs interest holding and claiming under the deed of trust executed by W. R. Gibbs on January 17, 1895, and established the same relations between appellee and each of said successive owners of said interest as that which had existed between appellee and W. R. Gibbs, and that said appellee, as a result thereof, could not in law repudiate said trust and acquire an interest adverse to either of said successive owners until they or some one of them while owning said interest in some way acquired actual notice of the fact that appellee had repudiated said trust relation and was claiming said interest adversely to such owner, and that the statute of limitations did not begin to run as against either of said successive owners of the W. R. Gibbs interest deraigned through the deed of trust until such actual notice was acquired.

[8] We are aware that actual notice may be proven by circumstances as well as by direct proof, and that the record in this case shows that appellee did some things after assuming the trust relation tending to show a repudiation of the trust, such as acquiring the deed from Mrs. Gibbs and placing it of record and fencing and improving the land. As we understand the law, however, merely being in possession of the land and rendering and paying taxes thereon in his own name, and such other acts are not inconsistent with their having been performed for the joint benefit of himself and his joint tenant, would be insufficient if brought home to the joint tenant to raise the presumption of an adverse claim. In drawing the distinction between the result of the acts of a joint tenant in possession of premises and that of a person not occupying such relation to the owner of the other interest, our Supreme Court as early as the case of Gilkey v. Peeler, 22 Tex. 663, through Chief Justice Wheeler, uses this language: "His possession must have been openly adverse to the heirs and mere acts of ownership in such a case are not sufficient to establish adverse possession." Again, in the case of Flanagan v. Boggess, 46 Tex. 330, our Supreme Court, speaking through Justice Gould, applies the same principle. Again, in the case of Madison v. Matthews, 66 S. W. 803, our Court of Civil Appeals, speaking through Justice Neill, uses this language: "The acts relied upon by the tenant in common, in showing an ouster of his cotenant, and the assertion of an adverse claim, should be more certain and unqualified in character than would be necessary in ordinary cases where there is no privity of estate between the parties claiming the property; and, in order to affect his cotenant with his adverse holding, *notice of such fact must be brought home to him, either by information to this effect, given by the tenant in common asserting the adverse right, or by such acts of unequivocal notoriety in the assertion of such adverse and hostile claim, that there will be presumed to have been notice of such adverse right.* Again, in the case of Wadsworth v. Vinyard, 131 S. W. 1171, the same principle is applied.

As the findings of fact of the trial court show that at the time appellee began asserting an adverse claim to the interest in the

land covered by the deed to him from Mrs. Gibbs the legal title thereto was in the Leon & H. Blum Land Company, and that they were tenants in common with appellee at that time, and that appellant acquired his title from said land company, and the trial court further finds as a fact that neither the Leon & H. Blum Land Company nor appellant ever had any actual notice of the fact that appellee was asserting a claim adverse to them until December, 1904, less than five years before this suit was filed, we hold that appellee did not and could not acquire title to appellant's interest in the land under the five-year statute of limitation, for the further reason that, under the record in this cause, it is conclusively shown that appellant and appellee each own an undivided one-half interest in the 80 acres of land in controversy. The trial court erred in rendering judgment for the appellee for the entire 80 acres of land, and said judgment will be here reversed and judgment will be here rendered, decreeing and vesting in appellant and appellee each an undivided half interest in the 80 acres of land described in the pleadings of both appellee and appellant.

It is further ordered that this cause be reversed and remanded to the trial court, with instructions to take such further proceedings only in this case as will result in a proper partition of said 80 acres of land between appellant and appellee, as prayed for in appellant's pleading, and as will result in properly vesting title in said parties, respectively, to the lands that may be set apart to them in said partition proceedings. ·

It is further ordered that all costs incident to this appeal be taxed against the appellee, and that all costs incurred in the trial court except that incident to the partitioning the lands between appellant and appellee be adjudged against appellee, and it is so ordered.