MONTGOMERY et al. v. TRUEHEART.†

(Court of Civil Appeals of Texas. Amarillo. Jan. 17, 1912. Rehearing Denied March 1, 1912.)

1. TRUSTS (§ 60*)—TRUST DEED—CONSTRUCTION—ESTATE CONVEYED.

A title bond recited that plaintiff was desirous that a railroad company should locate its depots upon certain land, and when such company had so located its depots plaintiff would convey the land to M. as trustee, who would sell the same as town lots, and after retaining 55 per cent. of the proceeds and the expenses of the sale, not exceeding 10 per cent., to pay the balance to plaintiff, M., to hold the land and have its sole management and sale for a term of five years from date, and at the end of said five years to retain 55 per cent. as his part, and deed and deliver the remainder to plaintiff except sufficient ground for right of way and depots, and plaintiff executed deeds to the trustee confirming the title bond. Held, that the title bond and deeds vested in M. as an active trustee the fee to the land for only five years to sell the lots and execute deeds to the purchasers.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 82; Dec. Dig. § 60.*]

2. TRUSTS (§ 134*)—RIGHTS OF TRUSTEE—ESTATE CONVEYED.

The court will, if necessary, enlarge the estate to a fee simple to enable the trustee to execute the trust, though the trust deed contains no words of inheritance.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 177; Dec. Dig. § 134.*]

3. TRUSTS (§ 134*)—POWERS OF TRUSTEE—RIGHT TO CONVEY.

While ordinarily a trustee takes the naked legal title, the beneficial interest remaining in the grantor, where a trust was created to enable the trustee to sell the land conveyed, he took both the legal and equitable estates with power to convey to purchasers.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 177; Dec. Dig. § 134.*]

4. EQUITY (§ 57*)—MAXIMS—REGARDING AS DONE THAT WHICH SHOULD BE DONE.

Where land was conveyed to a trustee to hold it for five years and sell it as lots, retaining 55 per cent. of the proceeds at the end of the five years, the beneficial title to the remaining 45 per cent. of the property reverted eo instanti to the grantors as if they had received a reconveyance from the trustee, in view of the maxim that equity regards that as done which should be done.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 179; Dec. Dig. § 57.*]

5. VENDOR AND PURCHASER (§ 230*)—BONA FIDE PURCHASERS—RECORDS.

Where land was conveyed to a trustee to sell for the grantor's benefit during a five-year period, purchasers from the trustee took title with notice of the limitation in the trust deed as to the duration of the trust.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 502–512; Dec. Dig. § 230.*]

6. TRUSTS (§ 112*)—CONSTRUCTION OF PARTIES.

A construction placed upon a trust deed by the parties thereto showing their intent in executing it should control.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 162; Dec. Dig. § 112.*]

7. TRESPASS TO TRY TITLE (§ 10*)—TITLE TO SUPPORT ACTION.

A reversion of the equitable title to a grantor at the end of the five years, during which he conveyed the land to a trustee to be sold for his own and the trustee's benefit, would support an action of trespass to try title by the grantor.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 13; Dec. Dig. § 10.*]

8. TRESPASS TO TRY TITLE (§ 25*)—DEFENSES—LIMITATION.

If the title alleged is sufficient to sustain an action of trespass to try title, only adverse possession by defendant under the statute of limitations, relating to the recovery of land, will bar the action; the defense of stale demand not being available.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 30, 31; Dec. Dig. § 25.*]

9. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION.

Payment of taxes by one tenant in common is not adverse to the interests of his co-

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court.

tenants, being construed as for the joint benefit of all of them.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

10. TENANCY IN COMMON (§ 15*)—ADVERSE POSSESSION—EVIDENCE.

Evidence in partition between tenants in common *held* not to show that defendant's holding of the land was adverse to plaintiff, so as to give him title under a plea of stale demand.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 42–52; Dec. Dig. § 15.*]

Appeal from District Court, Wichita County; P. A. Martin, Judge.

Action by H. M. Trueheart against R. E. Montgomery and others. From a judgment for plaintiff, defendants appeal. Affirmed.

A. A. Hughes, R. E. Huff, Wm. L. Wise, and A. H. Carrigan, for appellants. Montgomery & Britain and C. C. Huff, for appellee.

HALL, J. This is a partition suit, instituted by H. M. Trueheart against R. E. Montgomery, Mrs. M. Y. Smith, Harry C. Howard, John A. Howard, Bertha F. Hicks, Orin V. Hicks, Benjamin F. Thompson, the Panhandle Townsite Company, R. E. Huff, W. M. McGregor, T. I. Boone, Josephine Hudson, J. J. Lory, M. K. Emmert, Helen James, E. B. Gorsline, N. Henderson, W. T. Arthur, T. J. Riley, T. M. Bennett, B. M. Hardy, J. T. Entrekin, Ralph Darnell, John A. Dunn, Sam M. Michel, Mrs. Julia Holmes, R. H. Suter, B. W. James, N. C. McIntyre, and Myles O'Reilly, for the purpose of partitioning certain lots and blocks of land and 40 acres of land not platted, situate in the town of Wichita Falls, Tex.

It is admitted that in the year 1882 H. M. Trueheart owned an undivided five-sixteenths of the town of Wichita Falls, except certain lots which had been conveyed by the heirs of one John A. Scott, to N. W. Sealy and his vendees Judd and Bliss, and others. It was further admitted that J. P. Smith owned an undivided four-sixteenths; that G. F. Howard and Z. H. Postels owned an undivided four-sixteenths; that F. P. Knott owned an undivided three-sixteenths interest in the entire town of Wichita Falls, with the exception of the said lots conveyed by the Scott heirs named above. While the title to said property was vested, as stated, H. M. Trueheart executed and delivered to R. E. Montgomery, trustee, a bond for title to the above property, whereby he bound himself to said trustee in the penal sum of $10,000; the conditions of such obligation being: "That whereas, the above bounden H. M. Trueheart is desirous that the Ft. Worth & Denver City Railway Company shall locate its freight and passenger depot upon surveys 15 and 16 and 250 acres off of the east end of survey No. 18, in the name of John A. Scott, in Wichita

county, Tex., or either of them, upon which is now situated the town of Wichita Falls in said county. Now, if after the said Ft. Worth & Denver City Railway Company shall have located, established, and erected its freight and passenger depot and roundhouse upon said surveys 15, 16 and 18, or either of them, as aforesaid, the above-bounden obligators shall well and truly convey unto the said R. E. Montgomery, trustee, by a good and sufficient deed, all of my interest in said surveys 15, 16 and 250 acres off the east side of said survey 18, in the name of John A. Scott, upon which the town of Wichita Falls is now located, except the water power on said surveys and sufficient lands on the bank of the Big Wichita river for the efficient working and use of said power, say 10 acres on each side thereof, said surveys to be sold by the said R. E. Montgomery as town lots or blocks and 55/100 of the proceeds of the sales, after deducting all necessary expenses, to be retained by the said Montgomery, provided that all expenses of the sales, advertisements and preparations of sale of said land, shall be not greater, prorated with my interest, than the actual payments and expenses of the interest of the said Montgomery in said land hereby agreed to be donated, and all advertising accounts of said expenses shall be fully met by said Montgomery, at least semiannually from the date hereof, and said total expense of every description connected with the advertisement and sale of said lands, shall not exceed 10 per cent. of the gross receipts of sales and as much less as reasonable good management on said Montgomery's part can secure, and any excess over 10 per cent. shall be paid by the said Montgomery out of his interest, and that said Montgomery nor the railway, its representatives, nor their employés, as such, shall make nor charge for services rendered in connection with said land; said Montgomery to advance all sums necessary for the advertisements and sale of said land without interest, said advances to be deducted out of the first receipts for sales, the remaining 45 per cent. to be paid over to me in proportion to my interest in the several tracts, detail statements and the payments to be made and rendered on all lands sold and moneys received in at least three months from the date thereof. The said Montgomery to hold said land and to have the sole management of the same and the sale thereof for a term of five years from the date hereof and at the end of said five years to retain 55 per cent. as his portion and deed and deliver the remainder to me in proportion to my interest subject only to the conditions hereinafter mentioned, and that in addition donate and convey unto the said Ft. Worth & Denver City Railway Company the necessary right of way through said surveys, together with sufficient ground for depots, roundhouses,

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

yards and machine shops and which grounds, excluding the area of the right of way, shall not exceed 30 acres as a whole and my interest in which I will convey," etc.    R. E. Montgomery, in writing, accepted the trust with all of its conditions, and the instrument was duly recorded. It was further admitted upon the trial that the remaining owners of the land, namely, J. P. Smith, F. P. Knott, Z. H. Postels, and G. C. Howard, also executed and delivered to R. E. Montgomery, trustee, a bond for title to their interest in said lands in all respects the same as the bond executed by Trueheart, and in substance set out above.

It was further admitted that thereafter and on the 16th day of March, 1883, H. M. Trueheart executed and delivered to R. E. Montgomery, trustee, a deed, omitting the formal parts, as follows: "For and in consideration of the obligations and stipulations, and upon the terms and conditions named and stated, in a certain title bond, executed by me to R. E. Montgomery of Ft. Worth, Texas, dated at Galveston, Texas, June 3, 1882, and which is of record in the deed records of Wichita county, Texas, and to which records reference is hereby made for a more full and particular understanding of the terms and conditions of said title bond, do grant, bargain, sell and convey, unto the said R. E. Montgomery in trust for the term of five years from the 3d day of June, 1882, as stated in said title bond, all my interest in and to the town of Wichita Falls, in Wichita county, Texas, owned and held by me on the said 3d day of June, 1882, and which was and is an undivided five-sixteenths interest in the unsold portion of said town, situated on part of surveys Nos. 15 and 16, patented to John A. Scott.    Excepting from this conveyance the water power and other exceptions named in said title bond and also excepting so much of town plot as may be situated on survey No. 12, patented to John A. Scott.    Witness my hand," etc.

On the 7th day of February, 1883, Z. P. Howard, Z. Henry Postels, J. P. Smith, and F. P. Knott executed and delivered to R. E. Montgomery, trustee, their deed, conveying their interest in said land, which recites: "In consideration of the sum of one dollar to me in hand paid by R. E. Montgomery, trustee, and in accordance with the requirements of a certain bond, executed by us, to said R. E. Montgomery, trustee, of date the 18th day of March, 1882, have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said R. E. Montgomery, trustee, of the county of Pottawattami and state of Iowa, all those certain lots, parcels of land," etc.

On the 31st day of May, 1887, J. P. Smith, Z. Henry Postels, G. T. Howard, F. P. Knott, H. M. Trueheart and R. E. Montgomery executed what is termed a partition deed, as follows: "Know all men by these presents,

that whereas heretofore, to wit, on the 12th day of May, 1882, J. P. Smith, Z. Howard Postels, George P. Howard, and Frank P. Knott made and executed to R. E. Montgomery, trustee, his certain bond of agreement, whereby the said Montgomery, trustee, was to have conveyed to him certain real property, situated in the town of Wichita Falls, in the county of Wichita, state of Texas, said property to be sold by him and 45 per cent. of the net proceeds to be paid by him to said Trueheart, Howard, Postels, Montgomery and Smith, in proportion to their respective interests, and the remainder thereof, 55 per cent., to be retained by him at the expiration of five years from the date of said bond or agreement, the property remaining unsold to be divided and partitioned, said Montgomery to receive a conveyance from the other parties for his 55 per cent. and the 45 per cent. remaining to be conveyed by him to said Trueheart, Smith, Howard, Postels, and Knott, and reference being hereby expressly made to said bond, agreement and conveyance from said Trueheart, Smith, Howard, Postels and Knott, and which has been duly recorded in the records of Wichita county aforesaid; and whereas, said Montgomery, trustee, has made a settlement with said parties aforesaid in proportion to their respective interests; and whereas, all the parties hereto are desirous of terminating the trust and making a division and partition of said unsold town property:    Now therefore, know all men by these presents, that we, the parties above named, in consideration of the premises, and the sum of one dollar by each of the parties named, to each other paid and delivered, we do hereby particularly set apart, grant, bargain, sell and convey all our rights, title and claims in and to the following named property described, to wit."    The instrument then proceeds to set apart to the parties to it certain lots described therein, and, after the description of the respective shares, recites as follows: "To have and to hold to each of the parties named, the above property to them respectively set apart, to their own proper use and behoof forever, free from the claims of all the remaining parties. The intention of this deed of partition being to make and effect a complete division and partition of all the partnership property in said town, saving and excepting the land on the north side of the river in surveys Nos. 15 and 16, lying between said river bank and Wichita street and on the south side of said river in surveys 15 and 16 and lying between said river bank and front street, subject, however, to all the reservations named and set forth in the title bond or agreement heretofore alluded to; and also excepting from this partition all such land as lies between the right of way of the Ft. Worth & Denver City Railway Company and the adjacent blocks or streets, also which exceptions are to be held as tenants in common and parti-

tioned hereafter; and said parties do hereby declare that so much of said town map as may have been laid out or run over on survey No. 12, granted to John A. Scott, is in error and is not claimed or regarded as a part of said town plot. Witness our hands," etc.

It was further admitted that during the five years from the date of the bonds and deeds in pursuance thereof, conveying the property to R. E. Montgomery, that none of the lots described in plaintiff's petition had been sold or conveyed by the said Montgomery, but that all of said lots were a part of the property so conveyed to the said Montgomery, trustee, and that none of said lots described in plaintiff's petition were mentioned in said partition deed above set out. It is further agreed that on June 6, 1876, the Scott heirs conveyed to W. M. Sealey certain lots and blocks of the town of Wichita Falls, none of which are involved in this suit, and also an undivided one-fourth interest in the water power, created by the water falls of the rapids of the Big Wichita river, together with an undivided one-fourth of all the land lying between the Wichita river and Wichita street on the north side of the river and between the front street and the river on the south side of the river.

The statement of facts is very voluminous, showing the introduction in evidence of various judgments and deeds between the original owners of the land and others and from Montgomery to the other named defendants of parts of the property described in plaintiff's petition, none of which we deem necessary to be here set out. The 40 acres of land mentioned above, and which was partitioned by the judgment appealed from, is not involved in this appeal, since all parties concur in the judgment in so far as it divides said 40 acres; but the battle ground is the remainder of the property described in the petition, consisting of lots and blocks described by plaintiff.

[1-6] We think the effect of the bonds for title and the deeds subsequently executed in confirmation thereof was to vest in R. E. Montgomery, as trustee, the fee to the property described therein for five years only. The instrument created an active trust conveying to Montgomery, as trustee, all the estate owned and held by the grantors in the premises. 3 Pom. Eq. Juris. § 991. The instruments do not in terms contain words of inheritance, still if land is conveyed to a trustee without the word "heirs," and a trust is declared which cannot be fully executed but by the trustee taking an inheritance, the court will enlarge or extend their estate into a fee simple to enable them to carry out the express purpose of the grantor. Perry on Tr. §§ 315–320. Manifestly, it was the duty of Montgomery, under the instrument in question, to sell the lots described therein and to make to all purchasers thereof

deeds conveying the same in fee simple; otherwise the trust would be defeated. Ordinarily, he, as trustee, would hold only the naked legal title, the beneficial title remaining in Trueheart and the other grantors; but for the purposes of the trust, and no further, he was the owner of both the legal and equitable estates with the power to convey both to good-faith purchasers. This estate, however, is limited by the terms of the deeds and the title bonds to five years from their respective dates. 4 Kent, Com. 310; Spessard v. Rohrer, 9 Gill (Md.) 261; Perry on Tr. § 320. At the expiration of this period his power to convey more than his undivided 55 per cent. interest in any of the property terminated, and the beneficial title to the remaining undivided 45 per cent. of the property eo instanti reverted to and was vested in the grantors, and they became tenants in common with Montgomery of all the lots described in plaintiff's petition. Wisdom v. Wilson, 127 S. W. 1134; Cleveland v. Cleveland, 89 Tex. 445, 35 S. W. 145; Young v. Bradley, 101 U. S. 782, 25 L. Ed. 1044. At the end of five years from the dates of their respective deeds to Montgomery, the maxim "equity regards as done that which ought to be done" operating in favor of said grantors clothed them with all the interest in said lots which they would have had under a reconveyance from Montgomery. The conveyance being made to him as trustee, all purchasers took title from him with notice of the limitation in the deeds as to the duration of the trusts. Studebaker Bros. v. Hunt, 38 S. W. 1134; Mansfield v. Wardlow, 91 S. W. 859. The construction which we place upon the instruments before us is the same as that placed upon them by the parties themselves as manifested by their acts in executing the partition deed after the expiration of the five years, and their construction as showing their intent in the execution of the instrument should control. Bounds v. Hubbard City, 47 Tex. Civ. App. 233, 102 Tex. 578, 105 S. W. 56.

[7, 8] It is our opinion that, at the expiration of the five years mentioned in the instruments, Trueheart and the other grantors therein had such title as would support an action of trespass to try title. "It is now well settled that, when the title asserted by a plaintiff is sufficient to sustain an action of trespass to try title, it matters not whether such title be legal or equitable, the defense of stale demand is not available, and the plaintiff's right of recovery in such case is barred only when the defendant shows adverse possession under the statutes of limitations of actions for the recovery of land. Hardy Oil Co. v. Burnham, 124 S. W. 223; Duren v. Railway Co., 86 Tex. 287, 24 S. W. 258; Lowry v. McDaniel, 124 S. W. 711; Lyster v. Leighton, 36 Tex. Civ. App. 62, 81 S. W. 1033. No such possession is shown by the record, nor was there any attempt by

Montgomery to prove a title in himself to the property under any of the statutes of limitation relating to land. When a party claiming under a contract for the execution of a title, either legal or equitable, is guilty of laches, the plea of stale demand may bar his right; but where he had title, whether legal or equitable, no lapse of time, unaccompanied by adverse possession, can be successfully interposed to his detriment. Martin v. Parker, 26 Tex. 253; Lumber Co. v. Pinkard, 4 Tex. Civ. App. 671, 23 S. W. 720, 1015; Lochridge v. Corbett, 31 Tex. Civ. App. 676, 73 S. W. 96. .

[9] The fact that Montgomery paid the taxes on the property is not inconsistent with nor adverse to the right of plaintiffs and will be construed to be for the joint benefit of himself and his cotenants. Gibbs v. Eastham, 143 S. W. 323, decided by us at this term. He had a right to pay the taxes and charge each of his cotenants with their respective proportion.

[10] The lots involved in this suit were not taken into consideration in the partition of May, 1887, but it seems by mutual mistake were omitted from the partition deed then executed. Plaintiff testified: "Later an examination made by R. E. Montgomery and myself at Galveston in 1892, he and I checked up his accounts and reports and found that there were a number of unsold lots that had been omitted from the above-named partition deed. * * * And while I cannot repeat just what was said by each of us, I can say that neither by agreement, oral or otherwise, have I made or consented to any change of the terms of the title bond or of the deed made thereunder." On June 3, 1908, R. E. Montgomery wrote Trueheart, stating: "Now, if you please send me a list of the blocks of property conveyed to F. P. Knott, individually, and also a list of the blocks of land in which you and your associates had a 45/100 interest, then by referring to my sales record and in copy of the partition deeds I can tell just what property has been sold and partitioned. If you will do this at once I will then be able to give the matter my personal attention while I am here in Texas. I am just as anxious as you are to have this matter adjusted while we are still alive and can remember matters, especially as I notice that in a partition suit between you and Forman, representing property fronting on the river, not laid out in blocks, that my 55/100 interest was ignored." Montgomery further wrote Trueheart on June 26, 1908: "Have just returned from Denver and find your favor of the 12th instant waiting me here. I am very much obliged for the information contained therein, but what I really want is a list of the property owned jointly by Smith, Postels, Knott, Howard, Trueheart and Montgomery, originally sold by me as trustee, then a list of the property owned by us and unsold by me as trustee and then a list of the property that you think was omitted in that partition. I will then compare it with my records and the county records at Wichita Falls, so that when we do divide or effect a partition we will be sure that nothing is left out, because I rather think that the records in your office are probably more complete and accurate than any, but if I do find that you have omitted anything, you can of course rely on me to make it correct, or in other words, when we do make a settlement it should be both accurate and complete and leave nothing out as I expect to leave for Canada the last of next month. Your early attention to this will be greatly appreciated." In our opinion, this and other testimony in the record to the same effect clearly negatives the contention that the grantors in the instruments have been guilty of such laches, or that the claim of Montgomery was in any way hostile, or his holding of said lots was so adverse as to now give him title to the lots by virtue of his plea of stale demand. We cannot assent to the proposition that this proceeding is one to correct a partition erroneously entered into in '87, but is rather a suit to partition property held by the parties as tenants in common, which has never yet been partitioned.

We have carefully reviewed the entire record with the purpose of ascertaining whether or not the trial court erred in adjusting the equities of all the parties in the rendition of his judgment. We have not considered the assignments of error in the order in which they are presented in appellant's brief; but upon inspection of the entire record, considering the errors assigned in connection therewith, we are unable to find any reversible error, and the judgment is therefore affirmed.